## BRAFFMAN v. GLOVER.

1. FINDINGS OF FACT by master and Circuit Judge that a deed was without full consideration, and was made with intent of both parties to it to delay, hinder, and defeat the creditors of the grantor, approved.

2. BADGES OF FRAUD—BURDEN OF PROOF.—When a deed is made by a failing merchant to a kinsman within a few days after notification that creditors are about to sue, the grantee having been sent for at a distance of 30 miles, but his arrival not awaited, and the alleged consideration being a prior advance by the grantee to grantor when she (the grantor) had purchased the land, and a verbal promise at that time to make such conveyance, if the grantor failed to make payment of balance due by her to her vendor (such balance not having yet matured), the court will require the fullest, clearest, and most satisfactory evidence of good faith on the part of the parties, whenever the *bona fides* of the transaction is called in question.

3. FRAUDULENT DEED—CREDITORS.—A deed made and received with the intent to defeat, delay, and hinder creditors of the grantor, is fraudulent and void as to creditors, even if based upon a valuable consideration.

4. A GENERAL EXCEPTION considered in the absence of objection by respondent to its consideration.

5. COMMON SOURCE OF TITLE.—In action to recover real property, plaintiff need not prove his title further back than to the common source from which both parties claim. Defendant's failure to prove any title in himself from such common source does not relieve him from the consequences of his admission of good title in the common source.

6. REFERENCE OF ALL ISSUES—JUDGMENT.—All the issues having been referred to the master, who reported the deed in issue to be fraudulent and void, but made no finding as to plaintiff's right of possession, the Circuit Judge, in confirming the master's report, did not err in directing possession to be surrendered to the plaintiff.

7. IBID.—WAIVER OF JURY TRIAL.—A jury trial is waived when both parties consent to an order referring all the issues of law and fact to the master to be heard and determined.

Before IZLAR, J., Abbeville, June, 1890.

Action by A. Braffman & Son against Sarah A. Glover and W. G. Wells. The opinion states the case.

*Messrs. Benet & Cason,* for appellant.

*Messrs. Parker & McGowan,* contra.

March 12, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiffs bring this action to set aside, as fraudulent and void, a certain deed from the defendant, S. A. Glover, to her co-defendant, W. G. Wells, and to recover possession of the tract of land purporting to be conveyed by said deed. The facts in brief upon which the controversy arose may be stated as follows: On the 24th day of December, 1883, one McCain conveyed the land in question to the defendant, S. A. Glover, the consideration expressed in the deed being two thousand dollars, one-half of which was paid in cash and the balance secured by two notes of five hundred dollars each, one payable on the 1st day of January, 1885, and the other on the 1st day of January, 1886, together with a mortgage of the pre-

mises.   On the 18th of September, 1884, the plaintiffs commenced their action against said S. A. Glover on two notes executed by her to plaintiffs in October, 1883, and recovered judgment thereon some time in November, 1884.   Under the execution issued to enforce this judgment, as well as under sundry other executions obtained by other creditors of Mrs. Glover, on debts contracted in 1883 and in the early part of 1884, aggregating in amount something over three thousand dollars, the land in question was levied upon and exposed for sale by the sheriff of Abbeville County in June, 1886, and the same was bid off for the sum of $355, which bid was set down to defendant Wells. The terms of this sale not having been complied with, the land was again offered for sale by the sheriff in August, 1886, when it was bid off by plaintiffs and titles made to them.   After this the execution of plaintiffs was returned *nulla bona*, and thereupon the action as above stated was commenced.   The defence set up was that the land in question had been conveyed by Mrs. Glover to the defendant Wells, by a deed bearing date 9th day of September, 1884, in which the consideration stated was two thousand dollars; and this is the deed sought to be set aside as fraudulent.

It appears from the testimony, that on the 4th day of September, 1884, five days before the execution of said deed, Mrs. Glover was distinctly informed by one of the attorneys for plaintiffs that they were instructed to bring suit immediately, unless the notes were paid, and that they intended to carry out their instructions, and that Mrs. Glover at once sent for Wells, who lived in the adjoining County of Edgefield, some thirty miles distant; but before he arrived, as we presume, the deed in controversy was executed, for the trial justice who was sent for by Mrs. Glover to prepare the deed, testifies that Wells was not there when the deed was executed and probated.   Wells in his testimony says that when Mrs. Glover bought the land from McCain, he loaned her the one thousand dollars with which to make the cash payment, and took her unsecured note therefor, and that the verbal understanding between them was that if Mrs. Glover failed to meet her notes to McCain as they became due, she was to let him have the land and he was to pay McCain, which he did, the

first note being paid at maturity and the other some time after it
was due, and that in fact he paid the entire purchase money of
the land.   But Wells, in his answer, after saying that Mrs.
Glover was unable to meet the second payment to McCain, and
she, in pursuance of their agreement, conveyed the land to him,
adds these words: "That after she had made sundry payments,
together with the interest accruing on the notes for the original
sum of one thousand dollars loaned her by this defendant, there
will remain due a balance on said note of thirty-five dollars, pay-
able 1st January, 1888." And Mrs. Glover, in her answer, makes
the same statement in a slightly different form, thus: "That after
the payment of sundry sums and the interest accruing on the
notes for the original sum of one thousand dollars, there will re-
main a balance due on said note of thirty-five dollars on the 1st
of January, 1888."   In his testimony, however, Wells says that
this balance was due not on the note for one thousand dollars
given to him by Mrs. Glover for the original loan, but upon the
last note to McCain, and arose from a mistake in the calculation
of interest.   It appears, however, that on the 7th of January,
1887, the mortgage to McCain was marked satisfied upon the
record.   It seems also that Mrs. Glover continued to reside upon
the land with her husband, after the execution of the deed to
Wells, to all appearances just as before, though Wells says that
they remained there by his permission, Mr. Glover being em-
ployed by him to look after the renting of the land.   No other
witness was examined for the defence, neither Mrs. Glover nor
her husband, nor Henderson, the son-in-law of McCain, to whom
Wells claimed to have made payments, nor Whitten, to whom he
claims the place was rented, nor were any of the notes referred
to or mortgage to McCain offered in evidence.

. The master, to whom it was referred by a consent order to hear
and determine all the issues of law and fact, made his report,
finding as matter of fact, "That the conveyance by Mrs. Glover
to W. G. Wells was in whole or in part without consideration,
and that it was made with the intent, on the part of both parties,
to defeat, delay, and hinder other creditors of Mrs. Glover in the
collection of their demands against her;" and as a conclusion of
law, "That said conveyance is void and should be set aside and

cancelled." Upon this report and the exceptions thereto the case was heard by his honor, Judge Izlar, who rendered judgment, overruling the exceptions and confirming the master's report, adjudging that the deed in question be declared null and void— "without consideration and made to hinder, delay, and defeat the creditors of S. A. Glover"—that said deed be delivered up to the master and cancelled, and that plaintiffs are entitled to recover possession, and if possession be refused, after thirty days' notice, a writ do issue to the sheriff requiring him to put plaintiffs in possession.

From this judgment defendants appeal substantially upon two grounds: 1st. That there was error in holding that the deed in question was void for fraud. 2nd. That there was error in adjudging that plaintiffs were entitled to recover possession of said land.

We agree entirely with the master and the Circuit Judge in their findings of fact and law, that the deed from Mrs. Glover to the defendant Wells was in whole, or in part at least, without consideration, and that it was made with the intent, on the part of both defendants, to delay, hinder, and defeat the creditors of Mrs. Glover, and that it is therefore fraudulent and void. This concurrent finding of fact by the master and the Circuit Judge is neither without evidence to sustain it, nor is it contrary to the manifest weight of the evidence. On the contrary, we think it is fully sustained by the testimony. Without going into any detailed discussion of the testimony, it seems to us quite sufficient to refer to certain facts which stand out clearly in the testimony. Here is a woman engaged in merchandising, who, after contracting debts to an amount exceeding the value of the only property of which she seems to have been possessed, without making any effort, so far as appears, to provide for the payment of those debts, just as soon as she learns that one of her creditors intends to bring suit against her, proceeds with hot haste to convey away to her nephew all of her real estate under the pretext that he had loaned her the money to make the cash payment, with the verbal understanding that if she failed to make the next payments she was to convey the land to him, *before the maturity of said payment;* for it will be observed that the first

note to McCain did not become payable until the 1st of January, 1885, and yet the deed in question was executed about four months before that date, to wit, on the 9th of September, 1884. It is easy to find an explanation of this extraordinary readiness on the part of Mrs. Glover to comply with her alleged verbal understanding with her co-defendant Wells, before the contingency upon which she was to make the conveyance had occurred, when we recur to the fact that she learned of plaintiffs' intention to sue on the 4th of September, and that within five days thereafter she made the conveyance, probably as soon as it was practicable to do so, as it appears that she sent off for Wells, and also for Watson, the trial justice who drew the papers, and probably was too impatient to await the arrival of Wells, as Watson says Wells was not there when the conveyance was executed.

A court, when called upon to investigate the *bona fides* of such a transaction, would require the fullest, clearest, and most satisfactory evidence of good faith on the part of the parties concerned before it could be sustained. Such, however, is very far from the character of the testimony adduced by the defence. The only testimony offered to explain this, to say the very least of it, suspicious transaction is that of the person most interested; neither Mrs. Glover nor any other person who might have corroborated Wells in important particulars being offered as witnesses, nor were any of the papers alleged to have passed between the parties introduced in evidence. Then, too, the glaring inconsistency in the statement made in Wells's answer, to the effect that Mrs. Glover had paid all but a very inconsiderable balance of the note for one thousand dollars loaned her by Wells to make the cash payment to McCain, with that made in his testimony in regard to the same matter, together with the extraordinary nature of the transaction, when viewed in the light of a mere business arrangement, as Wells says it was— his relationship to Mrs. Glover being "no inducement to loaning her the money." For here was a young man, just starting out in life, loaning a considerable sum of money to a female engaged in the hazardous business of merchandising, whose financial condition he says he knew nothing of, though he "thought she would fail," without any security whatever, relying simply upon a ver-

bal understanding that if Mrs. Glover failed to pay the credit portion of the purchase money of the land when it became due, she was to convey the land to him. This, without adverting to other circumstances which might be mentioned, is quite sufficient to sustain the conclusions reached by the master and concurred in by the Circuit Judge. Indeed, if the testimony leaves anything in doubt, it is whether there was in fact *any* consideration for the deed. But even if there was valuable consideration for the deed, that would not be sufficient to sustain the deed in the face of the finding of fact that it was executed "with the intent, on the part of both parties, to defeat, delay, and hinder other creditors of Mrs. Glover in the collection of their demands against her." *Lowry* v. *Pinson*, 2 Bail., 324, recognized and affirmed in the recent case of *Archer* v. *Long*, 32 S. C., 186.

The third ground of appeal, which raises the only other exception to the judgment appealed from, is couched in such very general terms that, under the settled rule, it might very well be disregarded; for it simply imputes error to the Circuit Judge in adjudging that plaintiffs were entitled to recover possession of the land in dispute, without indicating in any way wherein the alleged error lies; but as no objection is raised by respondents, we will not decline to consider this ground of appeal. While the exception, as set out in the record, fails to show in what respect there was error, we learn from the argument here on the part of the appellants, that the alleged error is of a twofold character: 1st. That after it was held that Wells had no title, "his claim from a common source with plaintiffs ceased, and they then were put upon the strength of their own title, or rather had to show a complete chain of title before they could recover," and this they failed to do. 2nd. Because all the issues of law and fact having been referred to the master, who had made no finding as to the plaintiffs' right to recover possession of the land, the Circuit Judge could not consider that question, but was confined to a consideration of the exceptions to the master's report.

As to the first point, it seems to us that it is based upon a misconception of the principle upon which is based the well settled

doctrine that where two parties are contending for the possession of real estate, the plaintiff need not go beyond the common source from which both parties claim to derive their title. That principle, as we understand it, is based upon the idea that in such a case both parties admit title in the common source from which both claim, and therefore the only question is, which has the best title from such common source, it being regarded as conceded that down to that point the title is good. Now, in this case it is very manifest that both parties claimed from Mrs. Glover as a common source of title, and the fact that the defendant Wells has failed to make good his claim, cannot give him any right to dispute his admission made, as well in his answer as in his testimony, that Mrs. Glover was the common source of title, for if so, then the doctrine of common source of title could never be of any benefit to a plaintiff.

As to the second point, it seems to us that the Circuit Judge, in rendering judgment for the recovery of possession, only rendered a judgment which necessarily followed from the findings of the master. The only issue raised by the pleadings was as to the validity of the deed from Mrs. Glover to Wells, it being admitted that the plaintiffs had bought the land when it was sold under execution against her, and had received titles from the sheriff, and therefore when that issue was determined against appellants, the judgment rendered followed as a necessary consequence. See *Wagener* v. *Mars*, 27 S. C., 97.

We do not understand that any question is raised as to the right of appellants to have the question of title tried by a jury ; and we do not see how such a question could be raised in the face of the consent order of reference, whereby the right of trial by jury was waived. *Trenholm* v. *Morgan*, 28 S. C., 276.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.