# 154 McELWEE *v.* KENNEDY.

---

## McELWEE v. KENNEDY.

1. EQUITY—FINDING OF FACT.—This Court may reverse the findings of fact of a Circuit Judge in an equity suit when it appears that such conclusions are against the preponderance of the testimony.

2. FRAUD—DEED—STATUTE OF ELIZABETH.—To avoid a deed for fraud at common law or under Statute of Elizabeth, it must appear that the deed is without consideration or *mala fide,* and the release of a *bona fide* debt is a valuable consideration.

3. IBID.—STATUTE OF ELIZABETH—HUSBAND AND WIFE.—A debtor, under Statute of Elizabeth, may give a preference to one creditor over another, provided he does not thereby secure to himself a direct advantage in the use of the property at the expense of creditors, and same applies where the creditor is the wife of the debtor.

4. Fraud—Husband and Wife—Debtor and Creditor.—The residence of an insolvent husband with his wife on a tract of land conveyed by him to her in satisfaction of a *bona fide* debt is consistent with the marital relation, and violates no right of creditors.

5. Ibid.—Debtor and Creditor.—To annul a deed for fraud against creditors, it must be shown that grantee participated in fraudulent purposes.

6. Ibid.—Ibid.—A *bona fide* creditor, under common law or Statute of Elizabeth, may obtain a transfer of all the property of his insolvent debtor at a fair price, for the sole purpose of securing or paying his debt, whether grantee knew of his insolvency or not; and whether grantor disclosed the debt to other creditors or not, or whether debt was then due or not.

7. Fraud—Recording—Deeds.—Failure to record a deed within forty days and its record by grantee only a few days before assignment of grantor, is of itself not suggestive of fraud.

8. Ibid.—Debtor and Creditor.—Retention of property by insolvent debtor after sale to creditor while badge of fraud, is not conclusive. *Smith* v. *Henry,* 1 Hill, 16, *modified.*

9. Ibid.—A mere knowledge of grantor that his preference of one creditor over another would hinder and delay others, is not sufficient to taint transaction with fraud, if there be no actual intent so to do.

Before Townsend, J., August, 1898.   Affirmed.

Action by Margaret A. McElwee against Eliza J. Kennedy and James R. Kennedy, Mary B. Pressley, J. A. Crawford, administrator of Eliz. J. McElwee, James L. Moss, W. Brown Wylie and Ida E. Wylie, to set aside certain deeds as frauds upon creditors.   The Circuit decree is as follows:

This action was commenced September 28, 1897, to vacate two deeds from James R. Kennedy to Eliza J. Kennedy, dated January 15th, 1896, and February 25th, 1896, respectively.   The plaintiff, at the date of the commencement of this action, and all of the defendants above named, except Eliza J. Kennedy and James R. Kennedy, were judgment creditors of the firm of Kennedy Brothers & Barron, holding judgments which were recovered and entered of even date and equal rank.   The attorneys for the plaintiff, some or all of them, are also the attorneys for the defendant judgment creditors, who have made common cause with

the plaintiff. This action is, therefore, one for the benefit
of the judgment creditors of the firm of Kennedy Brothers
& Barron. The plaintiff and the defendant judgment
creditors, who adopt the allegations of her complaint,
charge that the two deeds which they seek to vacate are
fraudulent and void as to creditors, under the Statute of
Elizabeth. The defendants, James R. Kennedy and Eliza
J. Kennedy, claim that each of said deeds was executed upon
a good and valuable consideration, and was *bona fide,* one of
them, the deed for 443 acres of land, having been made in
the execution of a trust created in 1852, when this land,
which at that time belonged to Eliza J. Kennedy, was sold
under an order of the Court of Equity for York District, and
subsequently, within twenty years from its creation, ver-
bally declared, and thereafter repeatedly and continuously
acknowledged until the trust was finally executed by the
making and delivery of the deed on the 25th February,
1896; and the other, the deed of 307 acres of land, dated
15th January, 1896, having been made in part payment of
the rents which James R. Kennedy, as the agent and trustee,
collected from the tract of 443 acres, and accrued interest
thereon, for which the said James R. Kennedy promised to
account, leaving a large balance still unpaid..

The testimony shows, and I do find, that Dr. Henry R.
Smith, late of York District, in the State aforesaid, died in-
testate in the year 1846, leaving the defendant, Eliza J. Ken-
nedy, then Eliza J. Smith, a girl of about five years of age,
his sole heir at law, one of the tracts of land described in the
complaint in this action, the tract of 443 acres, constituted a
part of the estate of the said Dr. Henry R. Smith. In the
year 1852, under a proceeding in the Court of Equity of
York District, instituted by Robert Gilfillan (who had been
appointed general guardian of the said Eliza J. Smith), as
such guardian, the said tract of land was sold under order of
the Court of Equity made in said cause, and was purchased
by Samuel Blair for the sum of $4,208, which, pursuant to
the terms of the decree, was to be paid in three equal annual

instalments, with interest from the date of sale, salesday in November, 1852. As required by the decree in that proceeding, Samuel Blair executed his three bonds with security, with a mortgage of the premises to secure the same, to John L. Miller, who was then commissioner in equity for York District, and his successors in office. These papers are all filed in the office of the commissioner in equity, and all of them were recorded except the mortgage, and have remained continuously in the custody of the said John L. Miller and his successors in office until produced at the hearing of this cause. The deed to the said tract of land, made by John L. Miller as commissioner in equity to Samuel Blair, having been executed and delivered of even date with the bonds and mortgage executed by Samuel Blair to the said commissioner, was recorded in the office of the register of mesne conveyance for York District on the 26th August, 1854. This deed contained full recitals of and concerning the judicial proceeding by authority of which it was made and delivered. In the aforesaid proceeding instituted by Robert Gilfillan, as guardian, it was decreed further, on the recommendation of the commissioner in equity, that the purchase money of the tract of 443 acres of land remain in the hands of the trustee in the character of real estate, and that the petitioner, Gilfillan, be allowed to charge commissions only on the interest on the same, in lieu of rents. In 1859, James R. Kennedy married Eliza J. Smith, at that time a ward of the Court of Equity for York District, who was then in her 19th year. On 5th October, 1860, Samuel Blair gave to James R. Kennedy his sealed note of which the following is a copy: "$8,185.49. One day after date I promise to pay to James R. Kennedy or order, eight thousand one hundred and eighty-five and 49-100 dollars, for value received. Witness my hand and seal, October 5, 1860. (Signed) Samuel Blair. Seal."

Concerning this transaction both James R. Kennedy and Samuel Blair were examined. They each swore most positively that the transaction was had without authority, know-

ledge or sanction of the Court, or of its officer, the commis-
sioner in equity, in whose custody the bond and mortgage,
the choses of Eliza J. Kennedy, were, and also without the
knowledge or consent of Eliza J. Kennedy. The testimony
most conclusively shows this: and further, that James R.
Kennedy asked for the note as a substitute for the bonds and
mortgage in the custody of the Court, and that the note was
taken for about the amount then due in said bonds; that Jas.
R. Kennedy never at any time made application to the Court
for an order directing its officer to deliver the said choses to
him, and that Eliza J. Kennedy never at any time or in any
manner waived her equity to a settlement; that Samuel Blair
deemed the execution of the note "a weak act," and hesitated
seriously about doing so, but upon receiving the solemn
promise of James R. Kennedy, to the effect that he would
save and protect the property of Eliza J. Kennedy for her,
and act as her agent or trustee, he yielded, and delivered to
James R. Kennedy the note above described, the considera-
tion of which was the amount at that time due from Blair to
Eliza J. Kennedy on the bonds and mortgage in the custody
of the Court. James R. Kennedy held this note until 1867,
when, on the 13th of February of said year, Samuel Blair
confessed judgment on same in favor of James R. Kennedy,
and the judgment thus confessed was duly entered, became
the first, and of that time the only judgment against Samuel
Blair; thereafter one W. B. Pratt obtained a judgment for
a small amount against Samuel Blair, and with a knowledge
of the said bonds and mortgage, at that time in the custody
of the Court of Equity, levied on the 443 acre tract. The
land was sold by the sheriff on salesday in April, 1868, and
was bid off by James R. Kennedy for $1,800, which was
credited on the judgment which Samuel Blair had confessed
to James R. Kennedy. The deed of the sheriff to Kennedy
was not, however, recorded until November 4th, 1868.
Eliza J. Kennedy knew nothing of these transactions be-
tween James R. Kennedy and Samuel Blair (except such
notice as recording the said deed from the sheriff to James

R. Kennedy would give) until about the 1st of January, 1869, when James R. Kennedy for the first time informed her of what had been done, and then declared that he held the land for her, and would act as her agent and trustee, and would collect the rents and profits, and account to her for the same, guaranteeing that the rents should not, in any event, for any year fall below $250 per annum. In pursuance of this declaration of trust, and in fulfillment of his promise to account, James R. Kennedy, on or about January, 1873, gave his wife a note for all rents and profits up to that time, and about every four years thereafter he gave a renewal note, including the preceding notes and intervening rents and interest. The last note was given in 1893 for the sum of $2,100, which I find represents all previous notes given for rents and profits collected by James R. Kennedy from the 443 acre tract, together with intervening rents from the date of the execution of the last note, and accrued interest. I find further that this note was executed in fulfillment of the promise made by James R. Kennedy to his wife in 1869, to account to her for all rents and profits he should collect from the tract of 443 acres, which he then declared he held for her in trust. The note was made due and payable in 1899, six years after date, simply to dispense with more frequent renewals.

In January, 1877, James R. Kennedy, W. M. Kennedy and W. T. Barron formed the copartnership known as Kennedy Brothers & Barron. They continued in business until June 2d, 1896, when, from inability to make collections and to obtain further extensions from certain of their creditors, they made a deed of assignment. According to the proof, none of the members of the firm believed it to be insolvent on 15th January, 1896, when James R. Kennedy executed the first deed to Eliza J. Kennedy, and the same is true as to the belief of the various members of the firm on 25th January, 1896, when the second deed was executed. W. T. Barron, sworn for the plaintiff, testified that the firm believed it could pay the debts on 15th January, 1896, if the creditors of the

firm would grant it extensions.    Extensions were not pro-
cured by Mr. Barron, who was actually in charge of this
particular business, and an assignment was executed on the
2d June, 1896, within about twenty-four hours after such a
move on the part of the firm had been for the first time dis-
cussed or mentioned.    James R. Kennedy, who lived in the
county and for a number of years had not been in charge of
the business, was not aware that an assignment was under
contemplation until he reached Yorkville on June 2d, 1896,
in response to a summons from the other members of the
firm, or their representative, Mr. Finley.    He had been ap-
prised of Mr. Barron's efforts to effect a settlement of the
debts of the firm, and, with the assistance of his sons, had
agreed to work out any share of them he should assume, if
the arrangement was perfected by Mr. Barron; but he had
no knowledge of any contemplated assignment, until the day
the instrument was executed.    All of the firm assets of the
firm of Kennedy Brothers & Barron were turned over to the
assignee named in the deed, D. E. Finley, Esq., who was
sworn and testified for plaintiff in this cause, as to the value
of the assigned estate.    I find that the appraised value of the
firm assets of the firm was something over $13,000 and that
the firm debts amounted to something over $9,000.    The
assignee says that the assets have not realized near so much
as the appraised value.    For instance, the storehouse, valued
at $5,000, has since been sold for only $3,300, and the stock
of goods in hand, valued at $1,200, has since been sold at be-
tween $600 and $800; so, also, of the notes and accounts,
valued at about something over $7,000, the assignee does not
expect to realize more than $2,000.

Apart from the indebtedness of James R. Kennedy to his
wife, Eliza J. Kennedy, all of his other indebtedness arose
after the formation of the copartnership of Kennedy Broth-
ers & Barron, in 1877, and out of his connection with that
partnership.    The testimony fully shows that James R.
Kennedy honestly believed that the firm assets would dis-
charge his obligations as a member of that firm, and dis-

proves the presence of any covinous agreement or under-
standing between Kennedy and his wife, when the two deeds
were executed, whereby James R. Kennedy was to obtain
some personal advantage to himself out of the arrangement
at the expense of the rights of the plaintiff herein and his
other creditors.   Indeed, there was such a total absence of
any testimony to support such a charge, that although the
complaint charged actual fraud in the most positive terms
against both James R. Kennedy and Elizabeth J. Kennedy,
counsel for plaintiffs, in the argument, very properly with-
drew the charge of actual fraud against both Kennedy and
his wife.   It was further admitted by counsel for plaintiff
in the argument, that Eliza J. Kennedy was at the date of
the execution of both of the deeds a *bona fide* creditor of
James R. Kennedy; that the marital rights of James R. Ken-
nedy did not and could not attach to the bonds and mort-
gage, the property of his wife in the custody of the Court,
and finally that James R. Kennedy, when he purchased the
land at sheriff's sale, on salesday in April, 1868, was not a
subsequent *bona fide* purchaser without notice of the bonds
and mortgage.   Such being the case, he purchased subject
to the trust.   I find further, as matter of fact, that at the
date of said purchase, twenty years had not elapsed from
the date at which the first instalment of the purchase money,
represented by the bonds of Samuel Blair due and payable
on November 12th, 1853, became due, and that within one
year from the date of his purchase of the land with notice of
the trust, James R. Kennedy, on 1st January, 1869, acknow-
ledged positively that he held the land in trust for his wife,
and would account to her for all the rents and profits, as her
agent and trustee; that in January, 1873, before the pre-
sumption of payment from lapse of time even as to the first
instalment of the Blair debt, James R. Kennedy, evidently
for the purpose of keeping alive this promise and the trust
which the law had cast upon him when he purchased the land
at sheriff's sale in April, 1868, with notice of the said bond and
mortgage, and which he verbally acknowledged on January
11—56

1st, 1869, executed to his wife a note covering all the rents and profits collected by him as her agent and trustee from the date the 443 acre tract came into his possession, and, at intervals of every four years thereafter, with like purpose and intent, executed renewal notes embracing the previous notes, with intervening rents and interest, until all his promises to account for rents and profits were fulfilled and the trust executed by the conveyance of the land on February 25, 1896. I find further, as matter of fact, that the true consideration and obligation moving James R. Kennedy to execute the deed dated February 25th, 1896, was that he was in duty bound to execute the trust, when his wife, on account of bad health, demanded the legal title, so that she might know that her children would inherit her property. I find further, that the consideration of the note itself—the $12,100 note—furnished ample consideration for the conveyance, but that it was not the true or only consideration. As to the 307 acre tract, conveyed by deed dated January 15, 1896, the obligation moving James R. Kennedy to make this deed was the *bona fide* debt of $12,100, with interest thereon from January 2d, 1893, representing the rents and profits (and accrued interest thereon) collected by James R. Kennedy, as the agent and trustee of his wife, from 1869 to January 2d, 1893, from the tract of 443 acres; I find as a fact, that James R. Kennedy conveyed the 307 acre tract in part payment of this debt; and even if the value of the 443 acre tract is suffered also to remain as a credit on this debt, a very large deficiency will still remain unpaid. Both of the deeds assailed were recorded in the office of the register of mesne conveyance for York County before any of the claims of the plaintiff or of any other creditor of Kennedy Brothers & Barron were reduced to judgment, and it is not pretended that there was any agreement between Kennedy and his wife, preceding the execution of the deeds or after the date of execution, that they were to be withheld from record. Secrecy was certainly not the motive, for conclusive evidence to the contrary is furnished by the probate of the deeds three

days after the last deed was executed, before W. Brown
Wylie, Esq., clerk of court, he at the time in his individual
capacity being a creditor of Kennedy Brothers & Barron, as
was also his wife, Mrs. Ida E. Wylie, in a considerable
amount.    Mr. Wylie, clerk of court, testified that there was
no secrecy about the probate of the deeds, but that the sub-
scribing witness, a son of the grantor and grantee, made the
probate in his public office at his table.    The closest scrutiny
of the testimony at the hearing, and of the stenographer's
notes of the evidence which have been furnished me since,
fails to reveal to my mind any evidence of bad faith.    The
whole transaction seems to be in exact accord with the prom-
ise and plan of James R. Kennedy when he took the note
from Samuel Blair on October 5th, 1860.    He in his
promise to Blair, which induced the latter to execute to him
the note, outlined the course he intended to pursue, and ac-
cording to the testimony, he followed it on to the end, the
two deeds being the last act in the original plan.    The plain-
tiff and the other creditors of Kennedy Brothers & Barron
and of James R. Kennedy, as a member of that firm, have
no right to complain, because the testimony shows that had
they exercised proper caution and diligence, before they ex-
tended the firm credit, they would have discovered the record
in the Court of Equity under which the land was sold, with
the bonds and mortgage unpaid and still in the custody of
the Court; also the deed of the commissioner to Blair, with
full recitals concerning the judicial proceeding in which the
deed was authorized to be made, the confession of judgment
by Blair to Kennedy, the levy and sale by the sheriff, and the
deed from the sheriff to Kennedy, all of which, taken to-
gether, made up such a record as would necessarily invite
and incite further inquiry, and would have carried them
straight to James R. Kennedy for an explanation.    No such
diligence was used by any of the parties assailing these
deeds.    As a matter of fact, when all the debts against Ken-
nedy Brothers & Barron were contracted that are repre-
sented in this proceeding, the several creditors regarded the

firm as in excellent condition, and had no care about inquiring into the individual assets of the members composing the firm. When the charge of actual fraud was withdrawn after the introduction of the testimony, in the progress of the argument, and it was stated that legal fraud alone would be relied on, it became necessary for the Court to take into consideration certain matters that were urged by the plaintiff as badges of fraud, which have been fully considered, and, in the light of the testimony, satisfactorily explained. Indeed, in the argument before me, while legal fraud was imputed to James R. Kennedy from his acts, evincing, as was argued for plaintiff and the co-operating defendants, an intent to defeat, delay, hinder and defraud creditors, there was not a scintilla of evidence connecting Mrs. Kennedy with such alleged fraudulent acts or intent. In the whole transaction, I find that Mrs. Kennedy did not do anything that she did not have the right to do. Her husband held 443 acres of land, originally her land, in trust, and was largely indebted to her, in addition, for rents and profits collected from said land, for which he obligated himself, from time to time, to account. She demanded that such an arrangement should be made as would enable her children to inherit her property—she, in fact, demanded a deed; and in compliance with this demand, the two deeds were executed and delivered to her. Thus she obtained payment only in part of an actual *bona fide* debt, without any promise or understanding that James R. Kennedy was to receive any benefit from the arrangement. As to the failure to record the deeds within forty days from the date of their execution, that was a matter entirely within the discretion of Mrs. Kennedy. The transaction had been completed, according to the testimony, at the date of the respective deeds, when they were delivered to the grantee. There had been perfect good faith between the grantor and the grantee up to that time, and I fail to see how Mrs. Kennedy's failure to put these deeds on record within forty days after delivery could give complexion to the past transaction, unless there had been

evidence that the failure was a part of the plan to deceive and delay creditors, and of that there is no proof. As matter of fact, the testimony shows, and I so find, that Eliza J. Kennedy had no knowledge or reason to believe that the firm of Kennedy Brothers & Barron was insolvent, when she received the deeds, and when she placed them on record (which was before any of the claims represented in this action were reduced to judgment), nor was she aware that Kennedy Brothers & Barron were considering the execution of a deed of assignment, when she caused the deeds to be recorded. I find further, that $4,500 was the full value of the 443 acre tract, and that $2,540 was the full value of the 307 acre tract at the date of the conveyance. I find further, that Eliza J. Kennedy had no intention of aiding her husband in defeating and delaying the creditors of her husband in the collection of their debts. I have been unable to discover a single element of bad faith between the husband and wife in all of these transactions. As matter of law, I find that the deeds executed by James R. Kennedy to Eliza J. Kennedy on January 15th, 1896, and on February 25, 1896, for 307 and 443 acres of land respectively, were upon good and valuable consideration, and were executed in good faith for the purpose of executing a trust as to the 443 acres and of paying in part an honest debt, of which a very large balance remains unpaid, after crediting the value of both of these tracts. I find further, that the trust as to the 443 acres arose when the lands originally Eliza J. Kennedy's was sold under the order of the Court of Equity and was purchased by Samuel Blair, who, when he executed the bonds and mortgage to the commissioners, became the trustee for the mortgagee of the land, which he held in trust until it should be redeemed by the payment of the money it was pledged to secure, and the trust so created was shifted by operation of law from Samuel Blair to James R. Kennedy when the latter purchased the land at sheriff's sale in April, 1868, with notice of said bonds and mortgage in the custody of the Court, and was kept alive by repeated subsequent acknowl-

edgments at intervals of every four years until the deed was executed on 25th February, 1896. *Calvin* v. *Phillips,* 25 S. C., 233; *Roberts* v. *Smith,* 21 S. C., 465; *Pyles* v. *Bell,* 20 S. C., 367. I find further, that said trust was not discharged by the execution of the note of $12,100, and was never executed until the delivery of the deed on 25th February, 1896. In executing this deed upon the demand of his wife, he was merely doing voluntarily what a Court of Equity would have compelled him to do, had he applied to the Court for possession of her property in the custody of the Court. She having never waived her right to an equitable settlement, and it being admitted that the marital right never did attach and could not attach to said property in custody of the Court. This land was the only security for her inheritance from her father, and the manifest object of the deed was to execute the trust, and thus secure to his wife a part of her inheritance from her father. The conveyance of this tract of land cannot be regarded as a fraud upon creditors. Finally, I find that the only purpose of James R. Kennedy in executing the conveyance for the 307 acre tract on January 15th, 1896, was simply to secure to his wife her money, which he had received as her trustee under promise to return it to her; and the conveyance of both tracts (which were and are together of much less value than the amount of Mrs. Kennedy's money so received by her husband) cannot be regarded as a fraud upon creditors. I conclude, therefore, that the said two deeds were made upon good and valuable considerations, and in perfect good faith, and that the complaint should be dismissed, and that the defendants, Eliza J. Kennedy and James R. Kennedy, should recover their costs and disbursements; and it is so ordered, adjudged and decreed.

From this decree all parties appeal except defendants Eliza J. Kennedy and James R. Kennedy.

*Mr. C. E. Spencer,* for appellants, cites: *The action is in*

*no sense a creditor's bill:* 41 S. C., 63; 39 S. C., 203. *Twenty years furnishes conclusive legal proof that trust was executed:* 14 Rich. Eq., 176; 1 Hill Ch., 376; 14 S. C., 153; 23 S. C., 153. *A debt discharged is not good consideration against other creditors:* 18 Pick., 376; 6 R. I., 321. *Grantee had notice from facts:* 16 B. Mon., 472; 22 Tex., 479; 34 S. C., 403.

*Mr. I. D. Witherspoon,* also for appellants, cites: *Under present Constitution, there must be a hearing de novo on the facts:* 47 S. C., 347; 51 S. C., 263; Con. 1868, art. IV., sec. 4; Con. 1895, art. V., sec. 4; 45 S. C., 509; 51 S. C., 431.

*Mr. Geo. W. S. Hart,* also for appellants, cites no additional cases.

*Mr. Wm. B. McCaw,* contra, cites: *Whether trust is created or not, is question of fact:* 14 S. C., 217. *Action to set aside deed for fraud must be for benefit of all creditors:* 33 S. C., 537; 39 S. C., 116, 203; 1 S. C., 63; 41 S. C., 63. *An express and continuing trust was created by James Kennedy in favor of his wife:* 34 S. C., 401; 2 Hill Ch., 504. *And time will not run against it until repudiated and adverse possession by trustee:* 24 S. C., 587; 27 S. C., 192; 5 Rich. Eq., 32; 11 S. C., 304; 17 S. C., 305. *A bare acknowledgment of the debt or trust made within twenty years from the date of the presumption of payment will effectually rebut it:* 1 Bail., 150; 21 S. C., 465; 20 S. C., 367; 25 S. C., 233; 2 Bail., 278; 4 Strob., 94; Dud., 367; 6 Rich., 12; 1 McC. Ch., 394; 12 S. C., 142. *Presumption of payment in cases of this nature is rebuttable:* 17 S. C., 26, 489; 36 S. C., 328. *The consideration of the deed for 307 acres was a trust debt, which the insolvency of trustee could not effect:* 36 S. C., 329; 33 S. C., 474; 2 Hill Ch., 650. *Existing obligations are good and sufficient considerations of deeds:* 21 S. C., 272; 15 S. C., 44; 10 Rich. Eq., 411; 3 S. C., 208; 39 S. C., 119; 21 S. C., 391. *Husband may now pay wife a debt by*

*conveyance of land, and it is no more badge of fraud than to
another:* 52 S. C., 472. *Mrs. Kennedy not bound to know
condition of her husband:* 15 S. C., 52; 10 Rich. Eq., 411;
3 S. C., 208; 21 S. C., 261. *That consideration of deed is
pre-existing debt is not badge of fraud:* 21 S. C., 261; 1
Hill, 16; 2 Hill Ch., 636; 10 Rich., 74; 39 S. C., 119; 20 S.
C., 223. *Husband's possession consistent with deed and
marital relation:* 4 DeS., 234; 34 S. C., 416. *Failure to
record in forty days no badge of fraud or want of bona fides:*
26 S. C., 431; 33 S. C., 451; 38 S. C., 459; 27 S. C., 272.
*Husband only made such settlement with wife as Court
would have compelled him to make as trustee:* 34 S. C., 415;
2 Hill Ch., 651, 509; 12 S. C., 140.

October 9, 1899.   The opinion of the Court was delivered
by

Mr. Justice Jones.   The plaintiff, as a judgment cred-
itor of Kennedy Brothers & Barron, of which firm the de-
fendant, James R. Kennedy, was a member, after *nulla bona,*
brought this action to vacate two land deeds by the said
James R. Kennedy to his wife, the defendant, Eliza J. Ken-
nedy, as in fraud of plaintiff's rights under the Statute of
Elizabeth.   The Circuit Court sustained both deeds as made
upon good consideration and *bona fide,* and dismissed the
complaint.

In reviewing the findings of fact by the Circuit Court in a
cause in equity, it is now settled that this Court may reverse
such findings, when the appellant satisfies it that the
preponderance of the evidence is against the conclu-
sion of the Circuit Court.   *Finley, Receiver,* v. *Cart-
wright,* 55 S. C., 198.   After carefully considering the evi-
dence under this rule, we do not feel warranted in reversing
the Circuit Court on the findings of fact which must control
this case.

The Circuit Court has found that the deed for the 307 acre
tract was executed and received in part payment of a *bona
fide* debt held by the grantee against the grantor, and that

the deed for the 443 acre tract was made and received for the purpose of executing a trust in reference thereto, and also in part payment of a *bona fide* debt; that neither grantor nor grantee intended thereby to hinder, delay or defraud the creditors of the grantor; that the land was conveyed at a fair valuation, and that there was no secret trust or agreement by which the grantor in said transactions was to obtain some advantage at the expense of his creditors. Concurring as we do in these conclusions, a judgment for affirmance must follow.

To avoid a deed for fraud at common law, or under the Statute of Elizabeth, it must appear that the deed is without consideration or *mala fide*. It is not questioned that at the time of the conveyances the grantee was a *bona fide* creditor of the grantor to the amount of $12,100, evidenced by a note dated January 2d, 1893, and payable six years after its date. This note was credited with $2,540, as the consideration of the deed for the 307 acre tract at the date of its execution, January 15th, 1896, and with $4,500 as a consideration of the deed for the 443 acre tract at the date of its execution, February 25th, 1896. There is no doubt that the release of a *bona fide* debt constitutes a valuable consideration. On this ground, then, neither deed is invalid for want of consideration.

Were the transactions *bona fide?* Independent of the question in reference to the matter of trust concerning the 443 acre tract, so fully considered in the Circuit decree, we see nothing in the case more than an effort by an insolvent husband to give his wife a preference over his other creditors. It is not contended that the preference in this case is obnoxious to the provisions of the general assignment act. When not made under circumstances forbidden by that statute, the law allows a debtor to give a preference to one creditor over another, provided he does not thereby secure a direct advantage to himself in the use of the property at the expense of creditors, as the price of such preference. *Smith* v. *Henry,* 1 Hill, 16; *McPherson* v. *Mc-*

*Pherson,* 21 S. C., 261; *Magovern & Co.* v. *Richard,* 27 S. C., 272. This is true even when the debtor and creditor are husband and wife; for while transactions between husband and wife should be very closely scrutinized on account of the facility for fraud which such confidential relation affords, yet a husband may pay his wife a debt by a conveyance of land, and such conveyance is no more a badge of fraud than with any other creditor. *McGhee* v. *Wells,* 52 S. C., 472. The evidence shows that the amount credited on the *bona fide* debt as the consideration of the transfer was the full value of the land. There was no evidence of any agreement or understanding, secret or otherwise, by which the husband debtor should secure any direct advantage to himself in the possession and use of the property at the expense of his creditors. It was not shown that he had any kind of possession of the 443 acre tract after the conveyance, and as to the 307 acre tract, the home place, it was merely shown that he continued to reside there with his wife, the grantee. Such residence was perfectly consistent with a *bona fide* deed to her, resulting from the marital relation and not from the deed, and so violated no right of any creditor. *Trustees* v. *Bryson,* 34 S. C., 416.

To annul for fraud a deed based upon a valuable consideration, it must not only be shown that the grantor intended thereby to hinder, delay or defraud creditors, but it must also appear that the grantee participated in such fraudulent purpose. Even if we were to assume that there is evidence of *mala fides* in the grantor, yet if the sole purpose of the grantee was to secure her claims, having no intent to hinder, delay or defeat other creditors, her title cannot be affected by the *mala fides* of the grantor. The evidence fails utterly to show any intent on the part of the grantee to defraud her husband's creditors, and merely shows a purpose to secure her own *bona fide* claims.

Conceding the insolvency of the firm of which the grantor was a member, it does not appear that the grantee was aware of it, and if she was aware of it, that would not show fraud

in her, since a *bona fide* creditor has the right to obtain a transfer of property from an insolvent debtor at a fair price, for the sole purpose of securing or paying the debt. In such a case as this, if the insolvency of the grantor, known to the grantee, is a "badge" of fraud, it is explained or rebutted by the credible evidence that the purpose of the grantee was to secure her *bona fide* claims, a lawful purpose and sufficient to explain all circumstances of the case. In view of this purpose, the fact that the transfers included practically all the individual property of the grantor, becomes of small importance (no question arising here under the assignment act), for the right to give and receive a preference is not limited to any particular proportion of the debtor's property, but may extend to his whole property. Nor does it affect the grantee, that the grantor never disclosed to his creditors the existence of the grantee's claims. It is sufficient that the claims existed and were *bona fide*. Nor do we think that the fact that the note held by the grantee against the grantor was not payable at the time of the transfers, affords any evidence of fraud. The law does not forbid a debtor to pay and a creditor to receive a debt before it is due, provided the creditor's purpose is to receive his own debt and not to defeat or delay another's.

We have already noticed the matter relating to the alleged relation of possession of the property by the debtor after the conveyances, by showing that there was no evidence of any such possession thereof as was inconsistent with a *bona fide* deed of same.

The fact that the grantee did not have the deeds recorded within forty days after their execution, and not until within a few days before the assignment by the firm of which the grantor was a member, is not suggestive of fraud in the execution of the deeds. There was no evidence that the grantee knew that an assignment was contemplated, and no evidence that she purposely withheld the deeds from record in order to hinder, delay or defraud the grantor's creditors. The deeds were duly recorded before

plaintiff acquired judgment, and the failure to record at an earlier date in no wise affected the plaintiff's status as an existing creditor.

Assuming *mala fide* in the grantor, appellant contends that the grantee stands in the grantor's shoes, because the consideration was a pre-existing debt and not coeval with the transaction. This distinction is supposed by appellant to be supported by the case of *Smith* v. *Henry*, 1 Hill, 16, but we do not so understand the case. In that case the Court was considering the effect of *retention of possession* of goods by an insolvent vendor after a sale thereof in payment of an existing debt, and held that such possession and use furnished conclusive evidence of fraud, showing that such advantage was the consideration on which the preference was given. In so far as Smith v. Henry held such a circumstance conclusive evidence, that case has been modified, and the rule is now well established that retention of possession by an insolvent vendor after sale, while a badge of fraud, is not conclusive, and may be rebutted by satisfactory evidence of such possession. *Nelson* v. *Good*, 20 S. C., 231; *Perkins* v. *Douglas*, 52 S. C., 132. In this case, however, as already said, there was no evidence of possession after sale, and so Smith v. Henry has no application in support of the distinction claimed. If appellant's contention were correct, a pre-existing debt would not constitute a valuable consideration, and in a transfer based upon such consideration, it would not be necessary to show concurrence by the grantee in the fraud, if any, of the grantor.

We have been considering the case on the assumption of bad faith in the grantor, but we do not think the evidence warrants such a conclusion. We are convinced that the grantor intended only to satisfy the *bona fide* claims of his wife, and did not intend to hinder, delay or defraud his other creditors. A mere knowledge that the effect of the preference would be to hinder or delay other creditors, is not sufficient to taint the transaction, if there be no actual intent that the preference shall have such result.

Appellants' counsel frankly concede the good character of both grantor and grantee, the genuineness of the note (which furnished the alleged consideration common to both deeds), and the grantor and grantee, in doing what they did, never meant to do what either considered a moral wrong.

We have only deemed it necessary to add the foregoing in support of the decree of the Circuit Court, which is officially reported herewith. We have confined our attention to a discussion of the questions common to both deeds, but do not thereby mean to indicate any dissatisfaction with the views so fully and ably presented by the Circuit Court in reference to the trust relation between grantor and grantee concerning the 443 acre tract.

The judgment of the Circuit Court is affirmed.