8470

### VIRGINIA-CAROLINA CHEMICAL CO. v. HUNTER.

1. FRAUD—MORTGAGES.—The evidence in this case makes a *bona fide* case against the mortgages attacked for fraud, and in the absence of explanatory and exculpatory evidence on the part of mortgagor and mortgagee, brother and sister, they were very properly adjudged void.

2. CREDITOR's BILL.—It is proper in an action to have declared certain mortgages of a debtor void as against creditors and to call in creditors, to require those holding mortgages held valid in the proceeding, to prove them therein in the sense of making it appear how much is due on them.

Before GAGE, J., Laurens, January, 1912. Affirmed.

Action by Virginia-Carolina Chemical Company against G. Wash Hunter, Sarah Ellen Evans and Cole. L. Blease. Defendants appeal.

*Mr. Fred. H. Dominick,* for appellants, cites: *Proof required to show a deed is mala fide:* 56 S. C. 169; 64 S. C. 364; 20 Cyc. 552-3, 601.

*Messrs. Dial & Todd, Grier, Park & Nicholson,* contra, cite: *Badges of fraud:* Bump. on Fraud. Con., secs. 41, 42; 20 S. C. 231; 52 S. C. 132, 475; 41 S. C. 428; 75 S. C. 338; 56 L. Ed. U. S. 1080; 20 Cyc. 44, 449. *Badges of fraud in chattel mortgages:* 51 S. C. 43; 20 S. C. 20, 514; 26 S. C. 110, 336; 32 S. C. 368; 48 S. C. 405; 20 Cyc. 440; Rich. Eq. Cas. 410. *Failure to produce evidence:* 20 Cyc. 450, 753; 16 Cyc. 1062.

March 17, 1913. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The plaintiff commenced this action on December 14, 1908, in behalf of itself and all other creditors of the defendant, Hunter, to set aside for fraud

5—94

certain mortgages given by Hunter to his sister, the defendant, Mrs. Evans, as follows: One dated October 18, 1907, and recorded October 25, 1907, over 625 acres, to secure his note for $8,000, of same date, due one day after date. 2. One dated November 19, 1907, over 170 acres, to secure his note for $2,000, of same date, due one day after date. This mortgage was not recorded until November 10, 1908. 3. One dated November 6, 1908, over 800 acres, being the two tracts covered by mortgages numbered 1 and 2, which was all the land owned by Hunter to secure his note for $1,250. This mortgage was also recorded November 10, 1908. 4. One covering his personal property, dated November 19, 1907.

Plaintiff also sought to avoid a mortgage given to the defendant, Cole. L. Blease, for $1,000, on the ground that it was an unlawful preference in violation of the assignment act.

On motion of plaintiff, the Court passed an order appointing a receiver of Hunter's property and enjoining creditors from prosecuting their claims, except in this action. That order was affirmed by this Court. 84 S. C. 214.

The case was then referred to Hon. Frank B. Gary, as special referee, to hear and decide all issues and report his findings and conclusions.

In a report, showing careful consideration of the law and evidence, he reached the conclusion that all the mortgages given by Hunter to Mrs. Evans, except the one for $8,000, were fraudulent and void, and that the mortgage of the defendant, Blease, was valid. The defendants alone excepted to his report. Therefore, the validity of the $8,000 mortgage to Mrs. Evans, and the mortgage to the defendant, Blease, is conclusively established, and that part of the referee's report, which disposes of the issues as to those mortgages, is of no further consequence, and, for that reason, it is omitted. That part of the report which deals with the mortgages found to be fraudulent reads as follows:

"Hunter contracted the debts with the plaintiff in April, 1908, and July 23, 1908; both notes were made payable November 15, 1908. In 1908, Hunter planted a large crop, and, in April, 1908, sold eighteen bales of cotton from the crop of 1907. On November 13th, Hunter sold sixty bales of cotton, of the average weight of from 425 to 450 pounds. This cotton brought about 12½ cents per pound; making a total for this cotton of $3,100. Seven days before he sold this cotton, he claims to have given Mrs. Evans the mortgage for $1,250. Three days before he sold his cotton, the $2,000 mortgage to his sister, and the $1,250 mortgage to his sister were put on record. Less than two weeks after selling the sixty bales of cotton, the defendant, Hunter, wrote to Mr. Huff to the effect that he was unable to pay anything on his debts, and advised him to join the other creditors in their efforts to sell him out, and send him to the penitentiary. With more than three thousand dollars apparently going into his hands in November and December, 1908, he pays no creditors, but, on the contrary, permits to go on record against him mortgages covering all his real estate and all the personal property he owned. He claimed that his money went to pay his attorneys' fees. The evidence shows that he is now owing his attorneys $3,200. He does not attempt to make any showing as to what he has done with the large amounts going into his hands. It seems clear to me that the plaintiffs have shown that those conditions exist which, unexplained, warrant the inference that there has been a fraudulent disposition of his property. No effort has been made by the defendant, Hunter, to explain this combination of circumstances. We, therefore, conclude and hold, that there was a fraudulent disposition of his property on the part of the said Hunter. Having answered these two subsidiary questions in the affirmative, it seems to me that the main question before me, to wit: should the receivership be continued, and should all creditors of the defendant, Hunter, be enjoined from prosecuting

their claims otherwise than in this suit? must be answered in the affirmative. * * * We come next to the $2,000 mortgage from Hunter to Mrs. Evans, which is described in the complaint. This mortgage was executed by a brother to his sister. It purports to have been executed November 19, 1907, but it was withheld from record until November 10, 1908. So far as the public was concerned, it never saw the light of day until the mortgagor was insolvent, creditors were clamoring for the payment of their claims, and the defendant, Hunter, was making a fraudulent disposition of his property. It was not conceded to have been executed for a valid consideration, nor was it conceded that it was executed when it purported to have been. Giving due weight to the maxim, 'that fraud is never to be presumed,' and giving full effect to the rule that, in every case, fraud must be established by the party alleging it, nevertheless, after a careful examination of the evidence and the law applicable thereto, I am convinced that the plaintiffs have made out a *prima facie* case against the defendant on the grounds upon which they have assailed the mortgage in question. Taking into consideration the intimate relations existing between the mortgagor and the mortgagee, in connection with the other facts and circumstances developed by the evidence, my opinion is that the burden of proof has been shifted as to the mortgage under consideration, and it is incumbent upon the parties to the transaction to satisfy the Court, by the clearest and most satisfactory evidence, not only that there was a valuable consideration for the said note and mortgage, but that the same were given for the *bona fide* purpose of securing such debt, and not with the intent to hinder, defeat, delay and defraud the creditors of G. Wash Hunter. 'When a creditor challenges such contract for fraud, slight evidence will change the *onus* and cast on the conjugal pair (in this case it is brother and sister), the duty of manifesting the genuineness and good faith of the transaction by such evidence as will satisfy, or ought to

satisfy, an honest jury.' Wait on Fraudulent Conveyances, sec. 300. As to duty to make full explanation, see same work, sections 300 and 301; 14 Am. & Eng. Enc. L. (2 ed.) 487-9; *Clemens* v. *Moore,* 6 Wall., U. S. 299; *Hipp* v. *Sawyer,* Rich. Eq. 410; *McCorkle* v. *Montgomery,* 11 Rich. Eq. 114; *Wagner* v. *Mars,* 27 S. C. 98, 2 S. E. 844; *Braff-man* v. *Glover,* 35 S. C. 431, 14 S. E. 935. So far from making a full and satisfactory explanation to the Court, the parties who are, or should be, most interested in sustaining the validity of the transaction have been as silent as the tomb. In the face of the suspicious circumstances proved, and the charge of fraud made, they have been content to stand by and say nothing. Under such circumstances, there is but one finding for me to make, namely, that the transaction is fraudulent and void under the statute of Elizabeth. The case is unlike that of *McElwee* v. *Kennedy,* 56 S. C. 154, 34 S. E. 86, in that it is not conceded here, as it was in that case, that the mortgage was given to secure a valid indebtedness. I, therefore, conclude and hold that the mortgage given by the defendant, Hunter, to his sister, Mrs. Evans, more particularly described in the complaint, is void, for the reasons above stated. What has been said as to the two thousand dollar mortgage is applicable to the twelve hundred and fifty dollar mortgage, and, for the reasons stated, and for the further reason that the mortgage was *executed* at a time when the mortgagor was insolvent, when his creditors were clamoring for the payment of their claims, I conclude and hold, in the absence of some explanation on the part of the parties to the transaction, that this mortgage is void under the statute of Elizabeth. For the same reasons, I conclude and hold that the bill of sale of the stock of the defendant, Hunter, is void."

Upon hearing the referee's report and exceptions thereto, the report was confirmed and made the judgment of the Circuit Court. From that judgment, the defendants appealed.

On the former appeal in this case, this Court said : "When a business man, merchant, manufacturer or farmer disposes of large resources, and then, professing to have nothing, leaves his debts unpaid and sets his creditors at arm's length by refusing to give any account of his property, or to take any interest in the satisfaction of their claims, the Court is warranted in drawing the inference that there has been a fraudulent disposition of the property. These, it seems to us, are the facts here. They may be all explained away, and the defendant, Hunter, may, on the trial, exculpate himself entirely. All that we now hold is that a *prima facie* case of fraudulent disposition was presented to the Circuit Judge, warranting the appointment of a receiver."

It appears from the record that the defendants offered no evidence on the trial in the Circuit Court. The record also shows that the case made by the evidence offered by plaintiff against the validity of the mortgages annulled was considerably stronger than the showing made by the affidavits for the appointment of a receiver. Therefore, in view of the findings and conclusion of this Court, on the former appeal, and of the language above quoted from the opinion of the Court, it would be difficult to see how any other conclusion could be logically reached on the merits of the case than one of affirmance of the judgment of the Circuit Court.

We are satisfied with the reasoning upon which the special referee based his conclusion as to the invalidity of the mortgages annulled.

Having found that Hunter was insolvent and that the mortgages mentioned were fraudulent and void, the continuance of the receivership and injunction was a logical and proper, if not a necessary, consequence.

Without discussing the evidence in detail, we are satisfied that it made a *prima facie* case against the *bona fides* of the mortgages annulled, and, in the absence of exculpatory and explanatory evidence on the part of the defendants, it warranted the conclusion reached by the Court.

The referee recommended that all creditors, except plaintiff, be required to prove their claims in this case. The appellants contend that the Court erred in requiring the defendant, Mrs. Evans, to prove her mortgage for 2 $8,000, because the same had been adjudged to be a valid obligation of the defendant, Hunter; and the same position is taken with regard to the mortgage of the defendant, Blease. Clearly the validity of these mortgages is *res judicata,* and, therefore, it cannot be further questioned, but it has never been determined how much, if anything, has been paid on them. To illustrate: Mrs. Evans' mortgage was due more than a year before the commencement of this action. It was and is the duty of the debtor to pay it. He may have done so wholly or in part. There is nothing in the record to show that he has not. Therefore, there was no impropriety or error in requiring the holders of these claims to formally prove them,—in the sense of making it appear how much is due upon them, but their validity is not open to further question.

Affirmed.