# CHARLESTON.

## CARTER v. UNITED STATES COAL & COKE COMPANY *et als.*

Submitted September 16, 1919.    Decided September 30, 1919.

1. MASTER AND SERVANT—*Breach of Contract—Employment—Damages.*

   One who by himself or conspiring with others induces another to break his contract of employment with a third person, to the injury of that person, is liable in damages for the injury sustained by him, whether the injury done was for the benefit of the wrongdoer or not. (p. 626).

2. APPEAL AND ERROR—*Exclusion of Evidence—Appellate Court—Evidence.*

   On a motion to exclude the evidence, sustained by the trial court, an appellate court on writ of error may, if the record discloses it, consider all the evidence including any improperly rejected, in reaching a conclusion on the merits of such motion. (p. 629).

3. CORPORATIONS—*Corporate Agents—Breach of Contract of Employment—Question for Jury.*

   The evidence in this case as to the authority of the respective representatives or agents of the defendants, and of the company employing the plaintiff, to do the acts complained of, was sufficient to carry the case to the jury on the question of such authority. *Rau* v. *Boyer Smokeless Coal Company*, 84 W. Va. 47, 99 S. E. 213. (p. 629).

Error to Circuit Court, McDowell County.

Action by W. R. Carter against the United States Coal & Coke Company and others. Judgment for defendants upon a directed verdict, and plaintiff brings error.

*Reversed and remanded.*

*Greever, Gillespie & Divine* and *Cook & Howard,* for plaintiff in error.

*Anderson, Strother, Hughes & Curd,* for defendants in error.

MILLER, PRESIDENT:

In an action by the plaintiff against the United States Coal & Coke Company, and Edward O'Toole and J. M.

Tully, for maliciously and unlawfully causing his discharge from employment by the Consolidated Engineering Company, in the construction of a public road in McDowell County, the case averred is that being so employed and engaged by said engineering company and earning therein at least ten dollars per day and thereby supporting himself and family, and the said United States Coal & Coke Company being at the same time owner and operator of numerous coal mines near the place where said road was being constructed and where plaintiff was so employed, and said coal company being then and there interested in preventing workmen located near their said mines from working at any other work or employment or for any other employer and well knowing that plaintiff had the right to work for and be employed by said Consolidated Engineering Company without any interference or molestation by them, nevertheless in utter disregard of plaintiff's rights defendants did wickedly and maliciously and with intent to prevent him from continuing in said employment, in the month of July, 1917, by threats and other means induce, procure and compel the said Consolidated Engineering Company to discharge plaintiff from its service and to refuse him further employment, without any just cause, and thereby prevented plaintiff from working for or being further employed by said company and from making a living at such work, and whereby he was deprived of all employment for the space or time of eight weeks, to his damage five thousand dollars. A second count sets forth the same cause of action in substantially the same way, but averring in addition that plaintiff at the time of his alleged grievances was relying upon the said employment for the support of himself and family.

There was a demurrer to the original declaration, and as amended at the bar in some particulars not shown by the record, sustained as to the original, but overruled as to the declaration so amended; and issue was joined on the defendants' plea of not guilty. Upon the trial before the jury, at the conclusion of plaintiff's evidence, to which numerous objections were interposed by defendants, overruled as to some and sustained as to others, the court sustained the motions

of the defendants respectively to strike out the evidence and direct the jury to return a verdict for them, and each of which was done; and the judgment thereon was that the plaintiff take nothing by his suit and that the defendants recover their costs.

Counsel for plaintiff in their printed brief have not fairly complied with the rules of this court. It furnishes no practical aid to the court in arriving at a proper conclusion. The only legal proposition advanced, which is unsupported by citation of any authority or argument, is "that one who intentionally, without legal justification, procures any employer to discharge his employee, to the damage of the latter, is liable in an action for damages at the suit of the employee," a proposition, say counsel, so clear that they do not deem it necessary to cite authorities in support thereof.

But the proposition thus assumed to be so clear and applicable to this case as to excuse counsel from supporting it by any authority, even if generally true, is vigorously challenged by counsel for defendants as being inapplicable to the case at bar. They cite us to *West Virginia Transportation Company* v. *Standard Oil Company*, 50 W. Va. 611, and to the note thereto, and quotations at page 626 from the noted case of *Allen* v. *Flood*, L. R. Appeal Cases of 1898, which they say is the nearest authority they have found in this State applicable to the liability of one for securing the discharge of an employee. There are, however, at least two other decisions of this court in which the proposition laid down in the principal case and in the English case referred to was considered and in which the facts are more nearly analogous to those involved in this case. They are *Thacker Coal Co.* v. *Burke*, 59 W. Va. 253, and *Hendricks* v. *Forshey*, 81 W. Va. 263. The proposition there affirmed is that one who by himself or conspiring with others induces another to break his contract with a third person, to the injury of that person, is liable in damages for the injury sustained by him; and this is the law according to these cases whether the injury done is for the benefit of the wrongdoers or not. In the first case the action was by the coal company for damages for enticing servants from the plaintiff's services; in

the Hendricks case the suit was for conspiracy to deprive plaintiff of the benefit of his contracts with each of the defendants to haul their milk to market.

The proposition of *Allen* v. *Flood,* mainly relied on by counsel for defendants, is that an act lawful in itself is not converted by a malicious or bad motive into an unlawful act so as to render the doer of the act liable to a civil action. In the English case the court of appeals had held that Allen, a member of a boiler-makers' union, who had induced Flood's employers, shipbuilders, to discharge him, was liable. But the House of Lords reversed the judgment upon the ground that the defendant had violated no legal right of plaintiff, done no unlawful act, and used no unlawful means in procuring the discharge of the plaintiff. There was no proof in that case of any contract violated. The only proof relied on was that in the ordinary course plaintiff's employment would have continued, a fact which we think distinguishes it from the case at bar and from the three cases decided by this court.

Another case cited and relied on by counsel for defendants as particularly applicable to the case proven here, is *Raycroft* v. *Tayntor,* 68 Vt. 219, 54 Am. St. Rep. 882. It was held in that case that if one in the exercise of a lawful right threatens to terminate a contract between himself and another unless the latter dismisses an employee *not engaged for any definite time,* the discharged employee has no right of action for damages against the party making the threat, although his motive in procuring the discharge may have been inspired by malice. We call attention to the provision which we have italicised, "not engaged for any definite time." We find the Maryland case of *Lucke* v. *Clothing Cutters and Trimmers' Assembly,* 77 Md. 396, 39 Am. St. Rep. 421, a well considered case, reviewing many English and American decisions, and distinguishing the cases involving term contracts from those in which no term contracts were the subject of transactions. It was held that the fact that plaintiff was not employed for any definite time made no difference, as his employment was to continue as long as his work proved satisfactory, though with the understanding that his employer might discharge him at the end of any week, but would not

have discharged him but for the interference of defendants, made the conduct of defendants actionable. And answering a criticism of counsel that a recovery could not be had because plaintiff had only declared on a supposed contract when in point of fact there had been no contract violated, the court, citing cases and quoting from one of them, said: "We concur in this view and are clearly of opinion that the declaration sets out a cause of action, which the proof fails to sustain. The question of a contract *vel non* enters into the consideration of this case, but upon proper averment in the declaration ought to play but a small part in its determination. 'Where a contract would have been fulfilled but for the false and fraudulent representations of a third person, an action will lie against such person, although the contract could not have been enforced by action.' *Benton* v. *Pratt,* 2 Wend. 385, 20 Amer. Dec. 623." In *Johnson Harvester Co.* v. *Meinhardt,* 9 Abb. N. C. 396, 397, one of the cases cited in the Maryland case, it was said: "A distinction has been sought to be made between the cases where there has been an unexpired time contract, and cases where the services were by the day or by the piece, but I do not think such distinctions rests upon any sound reason."

In Kentucky we find two cases somewhat pertinent, at least to one phase of the case here, *Chambers* v. *Baldwin,* 91 Ky. 121, 34 Am. St. Rep. 165, and *Bourlier* v. *Macauley, Id.* 135, *Id.* 171. The first involved contracts for tobacco, not personal services; the other contracts of rival theatre owners with the same dramatic performer, in which the owner of one theatre, with notice of the previous contract, had induced the manager of the dramatist to break his contract with the owner of the other theatre. It was decided that the transaction though wrongful was not actionable, and that the petition presented no cause of action. That holding was based on the fact that the wrongdoer, a competitor, owed no duty to the other contractor, and was engaged simply in promoting his own interest and business.

The declaration in this case avers employment, but it is not alleged as proven that plaintiff was employed for any length of time, or that he had a contract with the engineer-

ing company for work for any time. The declaration probably ought to have been amended so as to cover the case made by the evidence, agreeably to the practice pursued in *Lucke* v. *Clothing Cutters and Trimmers' Assembly,* *supra;* and as we have concluded to reverse the judgment, the plaintiff may be permitted to amend his declaration if so advised, in order to avoid another mistrial.

With these principles in view the question remains whether the court erred in directing a verdict and pronouncing judgment for defendant. The motion to exclude must be viewed as upon a demurrer to the evidence. While not fraught with all the dangers nor all the advantages of a demurrer, such motion challenges the sufficiency of the evidence to carry the case to the jury, and we may look not only to the evidence admitted but also to that which was improperly excluded, which is made a part of the record. Plaintiff proved that he had a contract with the engineering company for hauling with two teams in building the public road, beginning on July 1, 1917, at six dollars per day for each team, twelve dollars per day for both, which employment was to continue from fifteen to eighteen months or two years; that he was employed for such length of time as the engineering company had work, and that payment was to be made every two weeks; that at the time of his discharge he had been at work under the contract about six weeks; and that his work was entirely satisfactory, so far as he knew, for no complaint had been lodged by his employers, and that he knew of none. This is certainly sufficient evidence of a contract for definite employment, and partial execution thereof, and of right to its benefits.

But it is claimed by defendants that there was no proof that plaintiff was discharged by anyone in authority, nor that his discharge was the result of any unlawful interference by the coal company or any officer or agent with authority to act. We think the evidence was such that the jury in the absence of any evidence to the contrary might have concluded that plaintiff was discharged by the engineering company. That he was discharged and denied further employment is fully proven. The evidence is that he was

twice discharged; that after the first time he was again put to work and shortly thereafter was a second time and finally discharged or laid off by the engineering company; that the first time he was discharged by Houck, the time keeper for the engineering company, but that when he went to the company's office for his pay, plaintiff swore that Smith, the "super", on learning from him that he did not live in the coal company's house, at the direction of Stansbury, who appears to have been the higher officer in charge, ordered plaintiff back to work, and he did go back and continued on the job after that time for about twelve days, when he was again discharged or laid off by one Wilson, another officer or agent of the engineering company, discribed as the walk'ng boss, and was thereafter denied further employment.

The circumstances of plaintiff's first discharge, as related by him and other witnesses, connecting defendants with responsibility therefor, were that he was laid off by Houch, the time keeper, about the time O'Toole and Tully had notified Stansbury to cut off another employee, Thompson, and that Tully was on his horse going down the road when Houck cut him off; that afterwards, when plaintiff was discharged the second time, Tully met him and Wilson going up the road, and that Tully said to Wilson, referring to plaintiff, "I thought I had told you to cut that man off," and said to him, "You can get rid of him or you can pull up your camp and get off our premises"; that the next morning Wilson came over where plaintiff and one Hawkins were taking the horses out of the barn, with a list of names, and that Wilson then cut him off; and that he had not thereafter worked for the Consolidated Engineering Company. Plaintiff further swore that afterwards he met Tully and inquired of him why he had been cut off, and Tully replied that it was Col. O'Toole's orders, and said, "I want you to understand that Col. O'Toole, Mr. Eavenson and myself is running this country, and you'll do what we say"; that afterwards plaintiff tried to get work from Tully, and that Tully answered that he would not give him one bit of employment.

The contention of counsel for defendant is that neither this

evidence nor any other evidence in the case sufficiently shows: authority of O'Tool or Tully, for the coal company; nor that of Smith, Houck or Wilson to bind the engineering company in the premises, or to make either of the defendants. responsible for the act or conduct of the others. We think,.. however, that although the evidence is not as strong as it. might have been, nor the facts as well developed as they should have been, the evidence was sufficient to carry the case to the jury on the main facts in issue, and that it, should not have been withdrawn from them by the motion to exclude. This conclusion, we think, is justified by the principles stated in *Rua* v. *Boyer Smokeless Coal Co.*, 84. W. Va. 47, 99 S. E. 213.

Our conclusion is to reverse the judgment, set aside the verdict, and to award the plaintiff a new trial.

*Reversed and remanded.*