15434

DINKINS v. ROBBINS *ET AL.*

(21 S. E. (2d), 10)

476

January-
ary, 1942.

*Messrs. Durant and Durant,* of Manning, Counsel for Appellants,

*Mr. John G. Dinkins* and *Messrs. Davis & McFaddin,* all of Manning, Counsel for Respondent,

June 26, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

This action in claim and delivery was instituted by Mrs. Frances M. Dinkins for the recovery of possession of a certain described LaSalle automobile or its value, and also sought judgment against the defendant, S. L. Robbins, for $10,000.00 actual and punitive damages.

The complaint alleged that on August 16, 1941, a deputy from the office of the defendant, J. E. Gamble, sheriff, took possession of plaintiff's above described property for and on behalf of the defendant, S. L. Robbins, while the automobile was parked in the town of Manning, South Carolina, and that the defendant, J. E. Gamble, refused to surrender the vehicle to plaintiff despite evidence submitted to him as to her ownership thereof; and that the unlawful and willful seizure and retention of said property had damaged her in the above sum.

The defendants, by way of answer, alleged that the defendant, J. E. Gamble, as Sheriff of Clarendon County, levied upon and took possession of the said automobile as the property of V. R. Dinkins, husband of plaintiff, pursuant to a judgment in favor of S. L. Robbins, dated March 25, 1941, and execution thereon (dated May 20, 1941) against the said V. R. Dinkins, who had recently purchased the automobile and used it daily in his business, and that a license for it had been issued to him. The defendants alleged further that after the execution had been issued in favor of S. L. Robbins, Mr. and Mrs. Dinkins had collusively conspired and schemed to prevent the sheriff from levying upon the property of V. R. Dnkins, thus preventing S. L. Robbins from collecting his judgment, and that in pursuance of such conspiracy, the registration of the State Highway Department was surreptitiously procured to be unlawfully changed, and that efforts were made to get the dealer of said automobile to change his records, and that as a part of such scheme, the plaintiff filed a deed conveying to her the land upon which her husband's saw mill and planing mill were located,

and that she has now filed a claim to practically all of the machinery and appliances upon said premises, with the claim that they are fixtures attached to the freehold. Defendants further alleged that if the said automobile was transferred from the husband to his wife, such act was done for the purpose of enabling him to evade the collection of the judgment against him.

At the trial of the case before the Honorable Samuel Want, Special Judge, presiding, and a jury, the plaintiff, a school teacher, testified that she rode to her work in a school bus, but that an automobile was indispensable to her husband in his work; that she purchased this automobile from her husband, prior to which time he had owned a car himself all of the time, that after she bought the car from her husband, "he used it maybe a little over fifty per cent of the time" and that "in the morning if I wanted his—the other car I would tell him I wanted it." The plaintiff's husband testified that he drove back and forth from his home to his place of business (a distance of twenty or twenty-five miles) practically every day, that after he transferred the car to his wife he continued to drive it, although not every day; that prior to June 9, 1941, he owned an unincumbered 1937 La Salle automobile which, on said date, he traded to the Boyle Motor Company, of Sumter, in return for the 1939 model LaSalle automobile in dispute, the car which he purchased being valued at $900.00. On this purchase he was allowed about $400.00 on his old car, it being undisputed that such allowance represented his own property. In addition, he paid $200.00 by check and, on the above date, gave a chattel mortgage, due ten days thereafter, for $300.00. This trade was made less than three weeks after the date of the issuance of the above-named execution against him.

The record in the case reveals that on June 13, four days after his trade with the motor company, Mr. Dinkins was served with a notice of the appointment of homestead appraisers in connection with the judgment against him in favor of S. L. Robbins. Ten days thereafter, on June 23,

as shown by the plaintiff's exhibits, the chattel mortgage was transferred to Mrs. Dinkins, the plaintiff in this action, by the Boyle Motor Company, and on June 27, four days thereafter, the motor vehicle license for the disputed automobile was likewise transferred to plaintiff. The public records reveal that V. R. Dinkins had given a purchase money mortgage on the disputed automobile, which was registered in his name prior to its transfer to his wife. The plaintiff testified upon cross examination that she bought the car from her husband about ten days after he bought it.

In addition to the disputed automobile, the plaintiff also testified that she owns a Cadillac automobile. Her testimony also disclosed that her husband was in possession of the La-Salle automobile when it was levied upon, although he no longer owned an automobile in his own name. Upon cross examination plaintiff's husband testified:

"Q. Do you own anything yourself, do you have anything that you call your own? A. No, I do not now.

"Q. You don't have anything you call your own? A. Not today.

"Q. How about before this judgment? A. Yes, I had property that was mine."

The homestead was set off on August 6, 1941, and the property at the plant which Mr. Dinkins operated was levied upon the same day. Claims to this property were filed by various creditors and by Mrs. Dinkins as landlord entitled to fixtures attached to realty under an unrecorded deed, with reference to which the following colloquy took place during the trial upon cross examination of V. R. Dinkins:

"Q. You don't know the name of the people who owned the property that you have got your mill site on, when your wife bought it? A. No.

"Q. When did she buy it? A. Nine or ten years ago.

"Q. In 1932, was it not? And she didn't put her deed on record until 1941? A. Well, I think so.

"Q. Why? A. Because there was not any necessity for it."

Throughout the trial, the presiding Judge strictly limited the testimony to transactions and instruments relating to the disputed automobile, while the appellants attempted to introduce testimony that the insolvent debtor, V. R. Dinkins, shortly before the rendition of the judgment against him, had committed other acts designed to defeat the judgment, and that in the proceeding brought to determine the priorities of the various claims to the machinery, Mrs. Dinkins had claimed a part, and finally had attempted to amend her answer setting up a claim to all of the machinery and property at the plant. Testimony not directly connected with the disputed automobile was excluded, among other grounds, as being related only to collateral matters.

The trial resulted in a verdict in favor of the plaintiff for the return of the said automobile, or its value of $750.00, and against S. L. Robbins for $100.00 actual damages, and $200.00 punitive damages. A motion for a new trial, upon six grounds, was made by the defendants, and in due time was refused by an order of the trial Judge. The case comes to this Court upon the exceptions of the defendants, the pertinent ones of which make two questions for our determination:

(1) Did the trial Judge err in excluding testimony as to other transactions between plaintiff and her husband?

(2) Did the trial Judge err in refusing to charge the jury as to badges of fraud?

The consideration of these questions is attended by certain difficulties which, fortunately, are seldom encountered by this Court in its efforts to effect a thorough consideration of all questions involved in the cases before it. The first of these difficulties in the present case is that the transcript of record does not contain "a concise narrative of the facts or evidence as agreed upon or settled," as required by Rule 4, Section 3, of the Rules of the Supreme Court, nor are the undisputed facts stated without the testimony, as is required by Section 4 of the same rule. Furthermore, although appellants have filed fifteen excep-

tions, a number of these cannot be considered here for the reason that they specify as error certain charges made, and the refusal of certain requests to charge, despite the fact that such commissions and omissions were not included among the grounds of the motion for a new trial. Furthermore, several proffered exhibits which were offered in evidence by the appellants, and excluded by the Court, are listed in the transcript of record, but of the eleven papers mentioned therein, the contents of only one are given. It is impossible for the Court to ascertain what was sought to be shown by documents whose contents are not revealed, for it is only by a study of the rejected papers that they could cast any light upon the questions here involved and their pertinency made to appear. In discussing a like situation, this Court, in the case of *LeGrande v. LeGrande,* 178 S. C., 230, at page 239, 182 S. E., 432, at page 436, 102 A. L. R., 582, said:

"The third and seventh exceptions relate to the refusal of the court to permit certain witnesses to testify as to conversations which they are alleged to have had with assured shortly before he died concerning his insurance. These exceptions must be overruled for the reason that the record fails to disclose sufficiently the testimony appellant expected from these witnesses. Counsel for appellant did not ask that the jury be excused, the witnesses examined, so that the exact testimony desired to be introduced might appear in the record. Neither did counsel state to the Court what he proposed to prove by these witnesses. One of these two methods should have been pursued. *Chandler v. People's National Bank,* 140 S. C., 433, 138 S. E., 888, 889. In that case this court said: 'We agree with the principle of practce that this court should not reverse a cause for failure to admit testimony, unless the record on appeal to this court shows fairly what the rejected testimony would have been.' "

Despite the handicap of the absence from the record of the rejected papers which could possibly reveal many facts pertaining to the conduct of this plaintiff and her husband

shortly before the rendition of the judgment against him, nevertheless, a close study of the record before us does reveal enough to warrant our consideration of some of the excluded testimony. Before discussing the propriety of excluding certain controverted testimony, several instances of such exclusion must be quoted here. The necessity of burdening the opinion with extensive direct quotations from the record is regrettable, but in the absence of an agreed statement of facts, and without the benefit of the excluded papers, there is nothing upon which to base our deductions other than upon the stenographic record of the proceedings.

Upon the cross examination of V. R. Dinkins with reference to the unrecorded deed to the property upon which the buildings and machinery connected with his business were located, the following colloquy occurred:

"Q. Well, you said it was not recorded before 1941. Tell me what made it necessary in 1941? A. Well, that was on the advice of my attorneys.

"Q. So your wife kept this title from 1932 until 1941 without recording it? A. I think that is correct.

"Q. Do you recall when you were served with notice to set aside homestead and appoint homestead appraisers?"

(Counsel for respondent objects and the jury retires.)

"Mr. McFaddin: The car was purchased June 9th, and the car, according to our contention, stayed in his name apparently, so far as the mortgage is concerned, until June 23rd. On June 13, 1941, he was served with notice to appoint appraisers under this judgment secured against him in this case, and we submit that is a circumstance to show that the transfer of the car to her was out of the plan, by reason of the notice against him to set aside homestead, or the notice appointing appraisers. So far as the record is concerned, the car was not transferred until after this notice was given, although before that time he had it in his name.

"The Court: If you are permitted to put into the record that on a said date a notice to set aside the homestead under

this judgment was issued, then you will have that date to compare with these other dates, in connection with the circumstances of this transaction. I don't think you should go any further than that.

"Mr. Durant: * * * In (the other cases) there was a levy on a mill and various parties filed notices that they Claimed some of the property, and that action was to determine the various claims, and that has been done under a finding of the Referee. The burden of the matters that came up in that as to these various mortgages and claims is as showing the concerted effort, we claim, to defeat this claim, and we submit we have a perfect right to go into those facts. * * * The facts we want introduced as to what mortgages were given—now, as to the disposition of them, one of them undoubtedly was for a past account and I think it is proper to show, when this judgment was pending or was rendered in the other case, that he went and gave a mortgage to another man.

"The Court: * * * All you want to do is show the date of the issue of the notice to set aside the homestead. If you go into all that we will get into dangerous ground. * * * I think it would be going too far to put in that record."

Later, in the cross examination of the same witness, the Court sustained the objection of respondent's counsel to the question: "Do you know what was set aside as a homestead?" Upon re-direct examination of the same witness, we find the following in the record:

"Mr. DuRant: We are not attacking the ownership by her, but the bona fide, by showing that she kept the deed off the record and then came in and claimed all of the machinery.

"The Court: Well, you are going into the other case on that."

The following is copied from the cross examination of the plaintiff:

"Q. After Mr. Dinkins' plant was levied on did you claim all the machinery out there as yours?

"Mr. Dinkins: We object, that is another case, * * * I don't think that is relevant.

"Mr. McFaddin: Here is a levy made on this automobile, a specific piece of property, and she comes and claims that it belongs to her, and here is a levy made on some other property that is ostensibly Mr. Dinkins' and she claims that.

"The Court: In reference to the automobile, she has gone into all of the facts, * * *. But if we get into this other subject, we are opening the door to I don't know what.

"Mr. McFaddin: I was just going to ask her if she claims it.

"The Court: * * * I will sustain the objection to keep the trial within some bounds.

"Mr. McFaddin: You had title to the mill site, didn't you, Mrs. Dinkins?"

(Counsel for respondent objects.)

"The Court: Sustain the objection.

"Mr. McFaddin: Well, your Honor, we think it is competent to show the relationship or line of dealing that prevailed between the husband and wife before this particular occurrence, relative to property which she contends was hers.

"The Court: I see the force of all you say, but I will have to rule that if you are permitted to go into that subject they would be entitled to go into practically the whole of that other case because of the possible inferences that might be brought out by you. Let's leave that out.

"Mr. DuRant: If your Honor pleases, * * * I think if you would get all the matters before you there would not be any question about it.

"The Court: * * * my present view is it would not do to permit such matters of other transfers to come into this case, * * *.

"Mr. DuRant: Not the transfer, but her dealings with regard to this saw mill. She allowed her husband this car

to run down here to conduct this mill without paying anything, and further, he could not carry on this business without it. Now, what I want to show is that this piece of land that they claimed she owned  *  *  *  that there was no rent paid for it, and she claimed her compensation would come from the machinery.

"The Court: But even that much, you are going into the other case.

"Mr. DuRant: Yes, that may be, but at the same time all that is to my mind going to the questions, which conclusively prove to my mind the lack of good faith.

"The Court: Well, we will have to have this understanding, the jury will understand that unless something contrary is stated to you by me later, nothing is in evidence, whether said by the witnesses or by counsel relating to any other pending case or to any other property in which these parties are interested, and has nothing to do with this case.  *  *  *  I feel that going into that would mean considerable complications, and it might stretch this matter out into three or four days of trial."

During the re-direct examination of the defendant, J. E. Gamble, counsel for appellants stated:

"Well, we would like to offer also her answer (in the other case) and notice of claims to a lot of the property but not all of it. This is sworn to.

"The Court: With respect to the offer of the answer as a whole, which I understand is sworn to, if there is anything in that answer that has specific reference to this automobile, I will rule that you may read that into the record.

"Mr. DuRant: There is nothing in the answer as to the automobile, it is only as to the plant.

"The Court: Note that the answer as a whole is offered and excluded."

(Counsel for appellants offers in evidence the judgment roll in the case referred to herein.)

"The Court: The judgment roll (number 7806) is excluded on objection by Mr. Dinkins on the ground as heretofore stated   *   *   *."

In the case of *Whitmire v. Heath,* 155 N. C., 304, 71 S. E., 313, it was held that where written evidence was improperly excluded, the appellate Court in reviewing the propriety of taking an affirmative defense from the jury for lack of proof will consider this writing as if it were a part of the evidence. Similarly, in the case of *Carter v. United States Coal & Coke Company,* 84 W. Va., 624, 100 S. E., 405, it was held that on motion to exclude the evidence, sustained by the trial Court, the appellate Court, upon proper procedure and if the record discloses it, may consider all the evidence, including any improperly rejected, in reaching a conclusion of the merits of such motion. We think that this principle of law is so well settled that further citation of authority is unnecessary.

In the present case, the answer of the appellants alleged that the plaintiff-respondent and her husband conspired to prevent a levy upon his automobile, and that as a part of such scheme, the plaintiff filed or recorded a deed conveying to her the land upon which her husband's saw mill and planing mill were located, and that, in addition, she also claimed, as fixtures attached to the freehold, practically all of the machinery upon those premises.

Under these allegations, was it proper for the trial Judge to exclude testimony of the circumstances attending transfers of property and financial operations between this husband and wife at a time approximately coincident with the rendition of a judgment against the husband in favor of one of the parties to the present action, and at a time when the husband was already heavily indebted?

In the investigation of alleged fraudulent conveyances, particularly between husband and wife, it is seldom possible for parties to an action to prove such allegations by direct testimony. Fraudulent intent in such instances can usually be shown only by a consideration of the attendant

facts and circumstances, a resort to which must usually be had in order to distinguish between transactions which are bona fide, and those which are not. The Courts frequently must resort to evidence of circumstances which are not properly explained, when such circumstances lead to the belief that a fraudulent intent was present. The transfer of one piece of property, or the execution of one encumbrance, standing alone, might not indicate an intent to defraud creditors, whereas testimony showing a series of transfers, when a debtor is indebted, and under other facts such as were present in this case, could possibly reveal a complete plan on the part of a debtor to place all of his property, with the connivance of his wife, beyond the reach of this creditors. Numerous efforts on the part of the appellants to prove the allegations of their answer are revealed in the record, and on one occasion the jury retired while counsel for appellants stated to the Court the substance of some of the foregoing matters which he desired to prove, but the trial Judge, in effect, confined the investigation to testimony directly connected with the LaSalle automobile under dispute. The trial Judge, by stating in the presence of the jury that in the absence of contrary instruction, nothing was in evidence relating to any other pending case or to any other property in which these parties were interested, thus prevented the efforts of counsel for appellants to show that there was a possible connection between the plaintiff's claiming the automobile used by her husband, in this instance, and her following a similar procedure, in at least one other instance, by claiming the saw mill and planing mill which her husband operated when a levy had likewise been made upon it.

We know of no subsequent discussion of the proposition of law involved here in which it has been more clearly and succinctly expressed than in the case of *Smith v. Henry*, 2 Bailey, 118, at page 123, 18 S. C. L., 118, in which the Court said: 

"Separately, these two evidences of fraud might be explained, but when joined together in the same case, they

make out, I had almost said conclusive, but certainly very strong evidence of fraud. * * * The plaintiff's vendor was sued, and shortly before the judgments were obtained against him, sold to the plaintiff five of his Negroes; to his brother, the remaining one, and to his step-father, his land; but retained the possession of the whole, without the payment of either rent or hire. It is tasking credulity very highly, to believe that such sales were not merely colorable, and for the secret use of the vendor; and how, after this proof, the presiding Judge could conclude, that there was no evidence on the part of the vendee, of a fraudulent intention in her purchase, I am at a loss to conjecture. These facts are the usual evidences of fraud, both in the vendor and vendee, and, nine times out of ten, the only evidences of it; for fraud is not to be expected to seek the glare of day, or the presence of witnesses for its consummation. It is usually effected in secret, and it is only from circumstances such as these, that we presume it."

In the instant case, during the cross examination of V. R. Dinkins, the following testimony was elicited:

"Q. Well, when it (the automobile in dispute) was levied on in Manning you had it? A. I did.

"Q. And you were using it about your business? A. Yes, that day.

"Q. Was it business of your wife's you were attending to? A. I don't think so.

"Q. You paid your wife any rent for that car? A No.

"Q. Give her any interest? A. No."

Although it thus became an admitted fact in the case that the plaintiff was not paid any rent for her husband's almost constant use of the automobile in dispute, counsel for appellants were prevented, under the Court's ruling, from eliciting similar testimony as to the possible lack of rent paid for the saw mill and planing mill which Mr. Dinkins operated but which his wife claimed.

Just as the insolvency of a debtor nullifies a gift made to defeat the rights of his creditor, such is also the effect of a transfer for a grossly inadequate consideration. In the present case, respondent's husband traded his car less than three weeks after the execution had issued against him in favor of S. L. Robbins. In that trade, Mr. Dinkins received an allowance of $400.00 for his unencumbered automobile, and, by his own personal check made an initial payment of $200.00 to the motor company on the purchase price of a $900.00 vehicle. Four days later he received a homestead notice in connection with Mr. Robbins' judgment, which put him on notice that he was in danger of losing such property as he might have to his creditor, whereupon the plaintiff claims to have bought the automobile from her husband, and to have paid the mortgage of $300.00. The plaintiff contends that she furnished the $200.00 with which the initial payment was made on the 1939 LaSalle automobile, but the testimony casts doubt upon that contention. In either event the plaintiff, who already owned a Cadillac automobile, and who paid her husband nothing whatever to reimburse him for the $400.00 allowance which he received for his old car in the trade, obtained a $900.00 automobile at an amazing bargain, whereupon her husband continued to use it regularly in the course of his business. Thus the plaintiff, who used a school bus in connection with her work, had two automobiles, while her husband, to whom the car was indispensable, owned none.

While these facts in this isolated instance were not conclusive of fraud, we think that testimony as to similar transactions, made under similar conditions and related in point of time, were not only admissible to show a design on the part of plaintiff and her husband to evade the payment of the judgment against him, but that, since these parties were husband and wife, such fraudulent conduct, if it existed under the particular facts of this case, could scarcely have been proved in any other way. Such fraud can be shown only inferentially by the many hints of

it which the record contains, such as the statement by V. R. Dinkins that the recording of the deed in 1941 to the property which the plaintiff contends to have owned since 1932 was made upon the advice, not of her attorneys, but of his attorneys. We think the jury was entitled to consider the numerous inferences of this kind.

Upon the subject of fraud, counsel for appellants requested the trial Judge to charge the jury in part as follows:

"Badges of fraud are circumstances which, unless satisfactorily explained, might lead a reasonable man to believe that fraud was present, and should be considered by you in determining whether or not fraud was present.

"I charge you that the following have been considered badges of fraud and may be given weight by you in determining whether or not fraud was present, if they are satisfactorily proved, and not explained."

Here, among other things, were listed:

"The fact that an action was pending, or that judgment had been rendered against him, or that notice to appoint homestead appraisers been served on him.

"The retention of possession by the transferor, or the retention of any benefit by him."

Quoting further from the language of Justice John Belton O'Neall in the case of *Smith v. Henry, supra,* we find on page 122 of 2 Bailey, on page 122 of 18 S. C. L.: "Applicable to this case, we have some general and well defined rules, by which it can be tested. Two of the most usual badges or evidences of a fraudulent sale are, first, the vendor's retaining possession, after an absolute sale; second, the pendency of suits against him, at the time of a sale or transfer of the most valuable part of his property. * * * Where, after an absolute sale, the vendor still retains possession, I have always thought that it was a fraud *per se,* in other words that it was a legal fraud; and if I have been in error in this respect, I have the consolation of knowing, that I am in company with the late venerable and distinguished Judge Nott, and with Chancellor Kent."

In the syllabus to that case we find the following on page 119 of 2 Bailey, on page 119 of 18 S. C. L.: "The idea of a badge of fraud is, that it furnishes a legal presumption of a fraudulent intention, which supersedes inquiry into the actual intention; and every badge of fraud is therefore evidence of a legal fraud, or fraud *per se*. It does not change the essential character of the presumption, that sometimes it may be rebutted, and sometimes not; for, until it is rebutted, the presumption remains, and whether rebutted or not, presents a question for the determination of the court, and not of the jury."

In the case of *Braffman v. Glover*, 35 S. C., 431, 14 S. E., 935, this Court held that when a deed is made by a failing merchant to a kinsman within a few days after notification that creditors are about to sue, with grantee having been sent for at a distance of thirty miles, but his arrival not awaited, and the alleged consideration being a prior advance by the grantee to grantor when the grantor had purchased the land, and a verbal promise at that time to make such conveyance if the grantor failed to make payment of an unmatured balance due by her to her vendor, the Court will require the fullest, clearest, and most satisfactory evidence of good faith on the part of the parties, whenever the bona fides of the transaction are called in question, and that a deed made and received with the intent to defeat, delay and hinder creditors of the grantor is fraudulent and void as to creditors, even if based upon a valuable consideration.

The present case involves the additional factor of the relation of husband and wife between the parties, and therefore the trial Judge should have admitted all evidence tending to show a fraudulent conspiracy between them as to the husband's property in general.

If the trial Judge should have allowed testimony as to the plaintiff's claim to the property and fixtures at her husband's place of business under a deed which was unrecorded for nine years, which we think was a transaction related to the present one and tending to show fraud

in this transaction, then certainly the Judge should have gone further and charged the jury as to circumstances in this case which have been held to be badges of fraud.

It is true that the trial Judge charged the jury that one is not expected to be able to prove fraud by direct testimony, and that a preponderance of evidence may consist of a consideration of all of the facts and "surrounding circumstances" that indicated fraudulent intent on the part of the parties to secrete the automobile or prevent its becoming subject to the creditors. Nevertheless, despite his instruction as to the attendant circumstances, he carefully and definitely limited the scope of their consideration to the details regarding the automobile itself. To tell the jury, on the one hand, that "surrounding circumstances" might be considered, and to state, on the other hand, that in the absence of something to the contrary, nothing was in evidence relating to any other pending case or other property, "and has nothing to do with this case," could have no other effect than to be confusing and contradictory to the jury, and it was misleading to charge that fraudulent intent could be shown indirectly, without an instruction as to the circumstances which they could consider. In an issue which depends upon indirect and circumstantial evidence, the jury is entitled to the aid of the Court's instruction in evaluating such circumstances which the Courts have held to be evidence or badges of fraud.

The judgment is reversed, and the case remanded to the Circuit Court for a new trial.

MR. ASSOCIATE JUSTICE FISHBURNE and CIRCUIT JUDGES A. L. GASTON and L. D. LIDE, ACTING ASSOCIATE JUSTICES, concur.

MR. ASSOCIATE JUSTICE STUKES did not participate.