15497

BELL v. ATLANTIC COAST LINE RAILROAD COMPANY

(24 S. E. (2d), 177)

162

April, 1942.

*Mr. Douglas McKay,* of Columbia, and *Messrs. Reynolds & Reynolds,* of Sumter, Counsel for Appellant,

*Mr. Shepard Nash,* of Sumter, Counsel for Respondent,

February 2, 1943.

The opinion of the Court was delivered by Mr. Chief Justice Bonham, with all other Justices concurring in the result. Mr. Associate Justice Fishburne writes a concurring and dissenting opinion in which the other Justices concur.

J. P. Bell, as plaintiff, instituted an action for the recovery of actual and punitive damages in the Court of Common Pleas for Sumter County, by the service of summons and complaint, against the Atlantic Coast Line Railroad Company, as defendant, about February 24, 1942, arising out of injuries which the plaintiff, a policeman in the Town of Mayesville, alleges that he sustained on or about the night of November 28, 1941, while he was making his rounds of duty in the town and in the county named. In the complaint it is alleged that the main highway through that town crosses a track of the defendant, and that while the plaintiff was standing about twenty feet from that crossing, a freight train which the defendant was operating on that track passed through the town at a high and rapid rate of speed, in the course of which it "picked up from the planking placed

by the defendant at said crossing, a piece thereof which had pulled off of said planking, which said piece of planking was about three inches in diameter and about eight feet long, and threw the same against the right side" of plaintiff.

The complaint further alleged "that under the law the defendant is required to maintain said crossing in a proper manner so as to make the said crossing safe for the use of the public generally and this plaintiff . in particular," and "that the law further imposes the duty upon the defendant, at the expense of the defendant, to so guard or protect its rails by plank, timber or otherwise, as to secure a safe and easy passage across its roadbed, and that the defendant did so construct the crossing hereinbefore referred to, by the placing of heavy planking near the iron rails across said highway, said planking having been placed by the said railroad at said crossing a number of years ago," and that "it was the duty of the defendant to so keep and maintain the planking at said railroad crossing placed there by the defendant" (at a point which it is alleged the defendant knew to be a greatly traveled place) "in a good and sound condition and not permit the same to become cracked or weatherworn, then to replace the same with sound planking, all of which duties the defendant failed to do and perform", and that in such failure, and in its failure to inspect the said planking, and in its operation of a freight train in such a manner as to permit some part of the train to catch and throw the broken part of the planking endwise against the plaintiff, the defendant was "negligent, reckless, careless, wanton and willful."

In its answer, the defendant denied all of . the allegations of the complaint, and the cause came on to be heard before the Honorable S. J. Royall, Special Judge, and a jury, on April 23, 1942. At the close of the testimony counsel for the defendant made a motion for the direction of a verdict upon two grounds, the first of which was "that there is no evidence of willfulness in this case to warrant the

issue of punitive damages being submitted to the jury."
The motion was overruled by the Court, and the jury
found a verdict in favor of the plaintiff for $500.00 actual
damages and $500.00 punitive damages, following which the
defendant moved for a new trial solely upon the ground that
the jury erred in awarding punitive damages. On the fol-
lowing day an order was signed by the trial Judge denying
the motion for a new trial, in which order it is stated: "The
defendant moved for a new trial as to punitive damages.
* * * I am of opinion that the question of punitive dam-
ages was properly submitted to the jury under the testi-
mony." From this order, and the judgment entered thereon,
the defendant appealed to this Court upon six exceptions,
two of which we quote at this point:

"4. The trial Court erred in refusing to direct a verdict
against punitive damages and in submitting the issue to the
jury on the ground that evidence of violation of a statute
alone warranted sufficient implication or evidence of will-
fulness, since there was no real evidence of willful or wan-
ton or even grossly negligent misconduct on defendant's
part to sustain punitive damages.

* * * * *

"6. The trial Judge erred in refusing to set aside the
verdict as to punitive damages and in holding that in addi-
tion to the implication arising from evidence of statutory
violation there was evidence of gross negligence on the part
of defendant's section master, in that there is no reason-
able inference to be drawn from the testimony that the sec-
tion master was grossly negligent, and furthermore that
willfulness and more than gross negligence would have to
be reasonably inferable to sustain the finding of punitive
damages."

It will be seen, therefore, that no question pertaining to
actual damages is before this Court.

The portions of the complaint which we have quoted al-
lege certain requirements which the law of this State im-

poses upon this defendant, and it will be seen that some of these specific, statutory requirements are set forth in the two following quoted sections of the Code of Laws of South Carolina for 1942:

"§ 8433. A railroad corporation whose road is crossed by a highway or other way within the corporate limits of any city, town or village, on a level therewith shall, at its own expense, so guard or protect its rails by plank, timber or otherwise as to secure a safe and easy passage across its road; and if, in the opinion of the proper municipal authorities thereof, any subsequent alteration of the highway or other way, or any additional safeguards, are required at the crossing, they may order the corporation to establish the same.

\* \* \* \* \*

"§ 8473. Whenever any steam or electric railway operated in this State is now or may hereafter be crossed at grade by a public highway, the persons, firms or corporations operating such railways are hereby required to construct and maintain safe and adequate grade crossing meeting the requirements of the authorities responsible for such highways; that is to say, that in case of grade crossings of State highways over such railways, the state highway department shall have the power to specify the character of the grade crossings, and the owners of the railways shall at their own expense construct and maintain the said crossings to meet the specifications of the state highway department, and in case of grade crossing of county or township highways over such railways, the same power shall be vested in the county or township authorities.

"Any persons, firms or corporations owning any electric or steam railway and failing or refusing to comply with the provisions of this section after having been notified by the proper authorities, in writing, and after the lapse of thirty (30) days from the date of such notice, shall upon conviction, pay a fine of ten ($10.00) dollars per day for

each day's delay. It shall be the duty of the state highway department in the case of State highways and county or township authorities in case of county or township highways to make complaint to any court of competent jurisdiction within the county where the offense is committed, and to furnish evidence before such court, whenever a violation or violations of this section may occur."

Before discussing the general law and the statutes which are involved here, we wish to examine briefly the testimony from which an inference of such a degree of negligence as would support an award of punitive damages was held to exist upon the trial in the Circuit Court.

Mr. G. A. Simpson, who for more than thirty years had been the section master for the defendant company, and who has charge of maintenance of the tracks and the crossings in the Town of Mayesville, testified that he was familiar with the crossing in question which is used by heavy trucks and caterpillars, and where the traffic is heavy, and where the highway department had been doing some work about the time of the accident. He testified that he inspected or "watched" the crossing under consideration approximately once or twice a week; that its condition looked all right to him, that he had inspected it only a few hours prior to the occurrence of the accident now under discussion, at which time there was no evidence of a long cracked plank, or any other defect which he could see in passing over the crossing; that "if that board came from there it was right in place and I never saw the cracks"; that no complaint had been made to him by the town officials that the crossing was not in good condition; that the board which was exhibited to him at the hearing was of cypress; that the plaintiff, who is an old section master himself, is a friend of his, and that two or three days after the accident the witness called on him and inquired whether anything was wrong with the crossing, whereupon the plaintiff said "no, not a thing, it

had to be something dragging on the train to choke that piece of board, or whatever it was, off."

Upon cross examination by counsel for the plaintiff, the witness testified that in his opinion the planking at the crossing had been put in place about two years prior to the accident; that whenever a split is discovered, the board is removed and is replaced with another if one is immediately available, otherwise the witness orders new boards, and until they arrive, the cavity caused by the removal of the split board is filled with rock; that if the crack in the present board had been visible, he would have seen it, and that the split in the board which was exhibited to him appeared to have been held together by spikes which prevented the crack from being visible.

In the order of the trial Judge refusing defendant's motion for a new trial, no other testimony than that concerning the above-mentioned witness is specifically referred to. In that connection the trial Judge in that order stated that "the jury had a right to consider whether the conduct of the section master in the performance or failure to perform his duties amounted to more than ordinary negligence or in fact amounted to gross negligence." The only detailed testimony relating to the conduct and duties of the section master was contained in his own testimony upon which apparently was the basis upon which the trial Judge ruled that "the testimony in this case was susceptible of more than one inference."

Mr. C. H. Pack, an inspector for the defendant, who inspected the train in question on the afternoon and evening of the accident, testified upon cross examination by counsel for the plaintiff that he had had eighteen years of railroad experience, that the suction caused by a rapidly moving train will pick up paper or something light and will pull it along behind the train, but that it would not, in his opinion, pick up heavy articles, although the vibration from the passage of the train would cause a loose board to "quiver a little

bit", but that in his opinion such suction would not result in picking up a piece of board as heavy as the one in evidence; that although no mechanism is perfect, and something about the train could possibly have come loose en route, that there was nothing loose, or hanging down in such a way that it could have struck the planking, when the train left Florence before it reached Mayesville, on its way to Sumter. With reference to his inspection at Florence he testified: "If I see anything that would cause anything to go wrong about the train, before it leaves there, I don't sign for nothing unless I see everything is right."

H. L. Robinson, another car inspector for the defendant, testified that he and Mr. J. L. Pack inspected the train on the night in question at Sumter, after it had passed through Mayesville, and that he found nothing hanging down or out of place and that he found nothing at all wrong with the train. Mr. J. L. Pack, who inspected the train with Mr. Robinson in Sumter, testified that he observed nothing out of the way about the train, that he has never missed seeing on an inspection, and that he would have seen anything wrong if it had existed. Two other inspectors testified that they found no defective condition in any of the mechanism of the cars upon the arrival of the train in Columbia a few hours after the accident, after having made a very careful inspection.

The engineer on the train in question testified that its rate of speed through Mayesville was about thirty to thirty-five miles per hour, that the trip on that evening was a normal run in which no difficulty was experienced, such as the dragging of any of the mechanism of the cars. He testified that if anything had been dragging which would reach down from the truck of the cars, he would have had notice of it because the object would throw up rock ballast which would strike the cars and constitute a warning to the conductor at the rear of the train. The conductor, who was riding in the caboose, testified that he found no defect in

the brake rigging or anything of the kind on the entire trip; that if he discovers anything wrong with the mechanism of the cars he applies air from the emergency valve and stops the train.

Mr. J. F. McIlwaine, resident engineer on construction of roads for the State Highway Department, testified that at the time in question he was in charge of the highway construction at Mayesville, including the portion of the highway at the crossing under consideration, that he passed over this crossing about once or twice each day, and considered it a safe crossing, and that it would have been a part of his duties to have had it remedied if it had been dangerous, but that he would not consider a long piece of cracked plank dangerous to the public even if he had seen it, unless it had been loose, and that it is entirely possible that a heavy truck on the highway might pass at any time and crack a plank.

The plaintiff testified that before he became a policeman in Mayesville he was an old section master for the Seaboard, that he customarily passed over this crossing more than two or three times a day, that he did not know how the piece of plank hit him or what caused it to do so, but that as he stood near the crossing "something" flew up and hit him after a part of the train had passed; that the space between the rails is filled in with dirt and ballast, and there is only one track at this point.

William Dean, a witness for the plaintiff testified on cross examination that he passes over this crossing two or three times a week, and that so far as he knew, the crossing had been in perfect condition. Another witness for the plaintiff, who sees the crossing almost every day, testified on cross examination that he had never noticed anything wrong with the crossing except that it was bumpy. There was also testimony by a witness for the plaintiff, upon cross examination, that the plaintiff being a policeman of

the town, it was his duty to report any dangerous condition.

While some of the testimony was more favorable to the plaintiff than that which we have cited, and might properly support a verdict for actual damages resulting from a lack of ordinary care (that question not being in issue here), there is no testimony, in our opinion, which indicates any approach to gross negligence by the defendant, or which supports the allegations of the complaint pertaining thereto.

Nor do we find in the testimony such evidence of willfull failure on the part of the section master or any of the agents of the defendant as would warrant the issue of punitive damages being submitted to the jury by the trial Judge, or to sustain any award therefor.

Mr. B. C. Webster, town clerk and treasurer of Mayesville, and Mr. Harvey Tiller, a councilman of that town, each testified for the plaintiff (who, himself, was a policeman), but no one of the three was sufficiently impressed with the condition of the crossing to demand any improvement, and yet all were persons vested with certain powers and responsibilities in that town. If these persons, including the plaintiff, saw no such danger in the crossing as to take steps such as are directed in the sections of the statutes which we have quoted, how can the actions of the section master, under the evidence here, be regarded as gross negligence?

In the case of *Sample v. Gulf Refining Co.,* 183 S. C., 399, 191 S. E., 209, this Court said on page 411 of the State Reports, 183 S. C., 191 S. E., on page 214; "While punitive damages are recoverable for negligence so gross or reckless of consequences as to imply or to assume the nature of wantonness, willfulness, or recklessness, yet they are not awarded in this State for mere gross negligence. *Watts v. South Bound R. Co.,* 60 S. C., 67, 38 S. E., 240; *Proctor v. Southern Ry. Co.,* 61 S. C., 170, 39

S. E., 351; *Boyd v. Blue Ridge R. Co.,* 65 S. C., 326, 43 S. E., 817; *Webb v. Atlantic Coast Line R. Co.,* 76 S. C., 193, 56 S. E., 954, 9 L. R. A. (N. S.), 1218, 11 Ann. Cas., 834. * * *."

See also the more extensive discussion contained in the opinion of this Court in the case of *Cubbage v. Roos,* 181 S. C., 188, 186 S. E., 794, in which it was held that where only one reasonable inference can be deduced from the evidence, the question becomes one of law for the Court, and hence the Court can peremptorily instruct the jury that it cannot award punitive damages, even though the letter of some statute has not been observed by the defendant.

We find nothing in the testimony to indicate that a dangerous condition at the crossing was reasonably discoverable for any appreciable time before the accident. The time during which the plank was allegedly defective was not shown, and there was, in fact, testimony tending to show that its condition might have been brought about by some passing truck or other vehicle immediately before the accident. It was not shown that the defendant, or anyone else, by the exercise of ordinary care, could reasonably have discovered the existence of a hazard in the condition of the plank, or reasonably have anticipated the event which occurred.

Furthermore, we do not see how the defendant can be held to have been grossly negligent when the testimony for the plaintiff fails to reveal whether his injury was caused by a plank, whose dangerous condition no one seems to have been able to observe prior to the accident, or by some unusual condition on the passing train. The plaintiff himself testified that "in some way, which I am unable to explain, the train ripped up a part of that board."

The sixth exception of the defendant is based partly upon the holding of the trial Judge, in refusing to set aside the verdict as to punitive damages, with reference to the im-

plication arising from evidence of statutory violation. We have already seen that the allegations of the complaint are largely based upon Sections 8433 and 8473 of the 1942 Code, which we have quoted herein, but under the authority of the case of *Cubbage v. Roos, supra,* we do not think that the existence of these statutes is controlling of the question of punitive damages under the testimony herein, if indeed, such statutes had any bearing on any phase of the case.

Under the provisions of Section 8433, the defendant was required to "so guard or protect its rails by plank, timber or otherwise as to secure a safe and easy passage across its road" at crossings similar to the one under consideration. There is no evidence or implication that this was not done by the defendant at this crossing. The remainder of that section provides that "if, in the opinion of the proper municipal authorities" any additional safeguards are required at the crossing, those authorities may order the corporation to establish them. It does not appear that the municipal authorities were of the opinion that any additional safeguards were required, or that any order was issued to establish them.

Section 8473 provides a method whereby owners of railways who refuse to construct and maintain grade crossings (after proper notice in writing) meeting the requirements of the proper authorities, may be punished. The statute states what authorities shall be responsible for such highways over such railways, and provides that the proper authority shall have the power to specify the character of the grade crossing which the owners of the railway must construct and maintain in accordance with such specifications, the penalty for such refusal to take effect only after the owners of the railway have been notified by the proper authorities, in writing, and after the lapse of thirty days from the date of such notice.

There is no evidence here that the defendant failed to construct the crossing in this case in accordance with the specifications of the proper authorities, or that the authorities gave any notice in writing pertaining to the construction or maintenance of the crossing. In fact the resident highway engineer testified that the crossing was a safe one.

In its discussion of negligence, we find in 38 Am. Jur., 834, Section 163, the following pertinent paragraph: "An action for negligence based upon an alleged violation of a statute or ordinance cannot be maintained where it appears that the statute or ordinance was enacted or ordained for a purpose wholly different from that of preventing the injury of which complaint is made. To afford a right of action for injury from the violation of a statute or ordinance the complainant's injury must have been such as the statute or ordinance was intended to prevent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him." (Citing many authorities.)

We have seen that Code Section 8433 contemplates "a safe and easy passage across" the railroad tracks, whereas the plaintiff here was not engaged in using the crossing, or waiting for the train to pass so that he could use it, but was standing some twenty feet distant for the purpose of watching the train go by.

In the case of *Hutto v. Southern R. Co.*, 100 S. C., 181, 84 S. E., 719, L. R. A., 1915-D, 962, Mr. Justice Hydrick, in delivering the opinion of this Court, said at page 184 of

the State Reports, 100 S. C., 84 S. E., at page 720: "* * * in actions under the common law, proof of the failure to give the signals required by the statute at nearby crossings has been held in numerous cases to be competent evidence in support of the charge of negligence. But such failure has never been held to be negligence *per se,* except as to those using or intending to use such crossings."

For the reasons which we have stated, we are of the opinion that the trial Judge erred in refusing to direct a verdict against punitive damages, and in submitting the question of punitive damages to the jury, and that his Honor also erred in overruling the defendant's motion for a new trial with respect to punitive damages.

The fifth exception of the defendant charged error in the Court's refusal to charge the jury, as requested by the defendant, that the two sections of the Code which we have quoted in connection with our consideration of the foregoing questions, were not applicable to this case since "the sole purpose of these Sections is to protect the members of the public in the use of the crossing." Such refusal to charge, however, was not included among the grounds of the motion for a new trial in this case, and therefore it, along with three other exceptions, cannot be held to be before this Court for determination. *Dinkins v. Robbins,* 200 S. C., 475, 21 S. E. (2d), 10; *Griffin v. State Highway Department of South Carolina,* 170 S. C., 403, 170 S. E., 459. However, in view of our decisions as to other phases of this case, in which the same two sections of the Code were involved, we may say that we think the trial Judge should have charged the jury as requested, for the reasons which we have already stated in our discussion of other phases of this case.

The judgment of the trial Court, insofar as it pertains to punitive damages, is reversed; and the case is remanded to the Circuit Court for a new trial, unless the respondent shall remit on the record, to the appellant, the amount of $500.00 punitive damages.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur in result.

MR. ASSOCIATE JUSTICE FISHBURNE (concurring and dissenting).

I am of the opinion that the lower Court should have granted the motion made by the defendant for a directed verdict as to punitive damages. For this reason I concur in the disposition made of this question by Mr. Chief Justice Bonham in his opinion.

I regret, however, that I am unable to agree with his holding that other issues raised by the exceptions as grounds of appeal cannot be considered because they were not included in the motion for a new trial made by the appellant in the lower Court. It is true that the defendant moved for a new trial solely upon the ground that a finding of punitive damages was unwarranted by the evidence, but this, I think, does not preclude the appellant from presenting for appellate review the other grounds covered by its exceptions. These exceptions assign error because of the refusal of the trial Court to direct a verdict on the ground that there is no evidence of actionable negligence on the part of the defendant; and failure to charge that neither Section 8433 nor Section 8473 of the Code applies to this cause since the sole purpose of these sections is to protect the members of the public in the use of the crossing.

By virtue of statutory provisions or rules of Court in many jurisdictions, it is necessary that errors occurring during the progress of the trial shall be made the basis of a motion for a new trial as a prerequisite to the consideration of such errors on appeal. 3 C. J., § 894, page 960; 4 C. J. S., Appeal and Error, § 352.

In South Carolina, however, we have no statutory provision or rule of Court governing such practice; and it has been held in many cases that errors committed by the Judge during the progress of the trial and

duly excepted to at the time may be assigned as error in the appellate Court in the absence of a motion for a new trial. Even where a motion for a new trial is made, grounds other than those therein stated, may be reviewed and passed upon on appeal.

It was held in *Redding v. South Carolina R. Co.,* 5 S. C., 67: "The various matters presented by the brief, as the record of proceedings in the Circuit Court upon a motion there for a new trial, are unimportant here. It was not necessary that the application for a new trial, so far as it was based on matters of law alone, should be made, in the first instance, to the Circuit Court. Such matters come properly before us by appeal without previous application to the Circuit Court. The motion before us comes up upon the record of the proceedings upon the trial of the cause, which, in the present instance, presents the single question, whether there was error in the charge and rulings of the Judge materially prejudicial to the appellants."

Mr. Chief Justice Stabler, in *Hubbard v. Rowe,* 192 S. C., 12, 5 S. E. (2d), 187, 189, discussing at considerable length this question of appellate procedure, reviewed the prior decisions, and had this to say:

"There are thirty-one exceptions, but counsel for the appellant have reduced the questions for decision to sixteen, all of which we think are fairly presented by the appeal. Before beginning our consideration of them, however, we will dispose of the following contention of the respondent: 'The rule that in order to carry to this Court objections to rulings made in the course of the trial, such objections must first be presented to the trial Court on a motion for a new trial, and that the stated grounds of such a motion delimit the questions that may be raised on appeal (as to matters occurring during the trial) has been frequently declared by this Court. The application of that rule to the present case eliminates twenty-six of the exceptions (including subdivisions) in this case.'

"In matters of appeal, so far as it appears, all that this Court has ever required is that the questions presented for its decision must first have been fairly and properly raised in the lower Court and passed upon by that Court. Of course, as to questions specifically affecting the verdict, or other questions not specifically ruled on, the Court below must of necessity be given an opportunity on motion for a new trial of passing upon and correcting such matters before they can or will be reviewed by this Court on appeal. The decided cases relied on by the respondent go no further than that.

"In *Detheridge v. Earle,* 3 S. C., 396, cited by appellant, syllabus 2, which correctly states the holding of ·the Court, reads as follows: 'For error of law, a new trial may be granted on appeal from the judgment, though no motion for a new trial was made before the Circuit Judge.'

"In *Brice v. Hamilton,* 12 S. C., 32, decided in 1879, where a similar question was considered, the Court said: 'A general objection is made by the defendants to the effect that no application was made to the Circuit Judge for a new trial, but the appeal is directly from the judgment, and, therefore, as they contend, the exceptions taken at the trial cannot be heard. There is no ground for such an objection. It was competent for the plaintiffs to have moved before the Circuit Court for a new trial, but as the objections to the verdict relate to matters of law alone, and could be heard in this Court, the appellants were not bound to submit them to the Circuit Judge, on a motion for a new trial, before appealing to this court. There is no provision of the code exacting any such condition to an appeal to this court, and no antecedent practice from which such a rule could be inferred. An appeal from a judgment involves any intermediate order involving the merits and necessarily affecting the judgment (Code, § 11), and this includes all rulings and charges material to the judgment.'

"The rule as thus stated in the *Brice case* has never been changed, either by statute or otherwise, as far as the cited

decisions disclose. The claim of the respondent, therefore, is held to be without merit."

In a later decision, *Cummings v. Tweed,* 195 S. C., 173, 10 S. E. (2d), 322, 327, the Court, through Acting Associate Justice Lide, announced the same principle in the following words: "We do not agree with counsel for the respondent that the failure to include this (failure to charge) as a ground of the motion for a new trial precludes the appellant from raising the question on appeal; * * *."

An examination of our cases shows no departure from what appears to have become the settled practice in this State, until the case of *Dinkins v. Robbins,* 200 S. C., 475, 21 S. E. (2d), 10, 12. In that case it was said: "Furthermore, although appellants have filed fifteen exceptions, a number of these cannot be considered here for the reason that they specify as error certain charges made, and the refusal of certain requests to charge, despite the fact that such commissions and omissions were not included among the grounds of the motion for a new trial."

The foregoing case (*Dinkins v. Robbins*) is cited in the opinion of Mr. Chief Justice Bonham, with the added citation of *Griffin v. State Highway Department,* 170 S. C., 403, 170 S. E., 459, 460. But I do not think that the *Griffin case* supports the proposition that all grounds for appeal must be stated in a motion for a new trial before they may be considered by the appellate Court. In the *Griffin case* the appellant asked for a reversal of the judgment on the ground that the jury disregarded the instructions of the Court, and rendered a verdict against the Highway Department through sympathy for the plaintiff and her children. It was held that "as this question was not raised in the court below on motion for a new trial, it is not properly before us."

But the foregoing holding is not at all inconsistent with the previous decisions of the Court, as shown by the cases reviewed in *Hubbard v. Rowe, supra,* where it is stated: "Of course, as to questions specifically affecting the verdict

or other questions not specifically ruled on, the Court below must of necessity be given an opportunity on motion for a new trial of passing upon and correcting such matters before they can or will be reviewed by this Court on appeal."

It seems to me clear that the rule announced in *Dinkins v. Robbins, supra,* is altogether too broad, and is out of line with all of our previous decisions, and should not be followed. I do not believe that by this decision the Court intended to abandon a long established appellate practice and to overrule all of the cases which are hereinabove cited. Furthermore, in *Dinkins v. Robbins* it was not necessary to pass upon this question. The case was reversed upon other grounds.

In the light of the foregoing discussion, it is my opinion that all questions raised by the exceptions should be passed upon. Therefore, it is proper to deal with the assignments of error relating to actionable negligence and refusal to charge defendant's request that the two Code sections have no application to the case.

Upon a careful consideration of the record, I am satisfied that the Court committed no error in refusing to direct a verdict based upon the ground that the testimony showed no actionable negligence. In my view, the testimony supports the verdict for actual damages.

I think, too, that the sections of the Code referred to are applicable to the issues in this case, and that the trial Judge committed no error in refusing to charge the contrary. In addition to the full summary of the evidence stated in the opinion of Mr. Chief Justice Bonham, this appears in the narrative statement of the plaintiff's testimony: "On the night of 28th November, 1941, witness (the plaintiff) was on duty. He came up on the Sumter side of the crossing and stopped for a freight train to pass at a point twenty or twenty-one feet from the nearest track. There was a freight train coming, and I stopped for the train to pass.' "

From this, it may reasonably be inferred that the plaintiff was about to use the crossing, and was deterred from so doing only by reason of the oncoming freight train. In the light of this testimony, it may be inferred that the plaintiff's injury was caused by his exposure to a hazard which it was the purpose of the statute to protect him from.

The common law gives a right of action to everyone sustaining injuries caused proximately by the negligence of another. The case at bar seems to be based both upon the common law and upon the breach of a statutory duty. Negligence is the breach of a legal duty, and it is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. In either case, the failure to perform the duty constitutes negligence, and renders the party liable for injuries resulting therefrom. All that the statute does is to establish a fixed standard by which the fact of negligence may be determined. *Crawford v. Atlantic Coast Line R. Co.*, 179 S. C., 264, 184 S. E., 569.

Under the opinion of the Chief Justice, the verdict for actual damages stands because exceptions attacking it were not deemed properly before the Court. In my view, the judgment as to actual damages must stand, but upon a different theory: The exceptions were properly taken, but in my opinion they are without merit. As heretofore stated, the trial Judge should have directed a verdict in favor of the defendant as to punitive damages.

A majority of the members of the Court concurring, it is the judgment of the Court that the judgment below is affirmed as to actual damages, and reversed as to punitive damages.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.