15743

DINKINS v. ROBBINS *ET AL.*

(34 S. E. (2d), 478)

*Messrs. DuRant & DuRant,* of Manning, S. C., Counsel for Appellants,

*Messrs. J. H. McFaddin* and *John G. Dinkins,* both of Manning, S. C., Counsel for Respondent,

June 7, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the Opinion of the Court.

S. L. Robbins recovered a judgment against V. R. Dinkins on March 25, 1941.

Execution thereon was issued on May 24, 1941, and lodged with the Sheriff of Clarendon County for collection. Notice for the appointment of appraisers to set off homestead was served on Dinkins on June 13, 1941; thereafter on August 6th homestead was set off to him; and on the same date the Sheriff levied on certain of his property. On August 16, 1941, the Sheriff further levied on a LaSalle automobile as the property of V. R. Dinkins. Immediately thereafter, Mrs. Frances M. Dinkins, wife of V. R. Dinkins, claiming that she was the owner of said automobile, demanded possession thereof, which was refused. Thereupon she brought this action in claim and delivery against the Sheriff and S. L. Robbins for the possession of said car and for the recovery of actual and punitive damages against defendant S. L. Robbins. Defendants filed an answer alleging that the automobile actually belonged to V. R. Dinkins, and that a claimed transfer of the car by him to his wife was fraudulent and void and was done as the result of a fraudulent conspiracy between the husband and wife to defeat the collection of the foregoing judgment against the husband.

This action has been hotly contested from the beginning. It was first tried entirely as a law case, before a jury, result-

ing in a verdict for plaintiff for the possession of the car, and for $100.00 actual and $200.00 punitive damages against the defendant S. L. Robbins. Defendants appealed to this Court, where the judgment was reversed because the trial Judge erred in excluding testimony, as to certain other transactions between the plaintiff and her husband and in refusing to charge the jury as to the badges of fraud. This decision is reported in 200 S. C., 475, 21 S. E. (2d), 10. Thereafter defendants moved in the Court below before Judge Greene for an order referring to a special referee all of the issues for trial. This motion was refused. Subsequently, defendants moved before Judge Grimabll for an order referring only the equitable issues to a referee. This motion was granted and the plaintiff appealed. The order of Judge Grimball was reversed by this Court on the ground that it had the effect of modifying the previous order of Judge Greene and that Judge Grimball was without authority to do so. This decision is reported in 203 S. C., 199, 26 S. E. (2d), 689.

After the decision on the second appeal, the defendants moved before Judge Henderson, who was then presiding in that Circuit, for a hearing and determination of the equitable issues. He held that, in addition to the equitable issues, it would be necessary for certain legal issues to be determined, upon which the plaintiff was entitled to a jury trial, and expressed the opinion that some of the testimony to be offered would probably be applicable to both issues. Accordingly, for the purpose of expediting the final determination of the case, Judge Henderson ordered that both the legal and equitable issues be tried at the same time before the Court and jury, the jury to decide the legal issues relating to plaintiff's claim for possession of the automobile and for damages and also to pass on any equitable issues which might be later framed by him, sitting as a chancellor, for the enlightenment of his conscience. The case was there-

after tried in this manner. In response to certain equitable issues submitted, the jury found that the automobile, prior to levy thereon, was transferred to the plaintiff by her husband for a valuable consideration; that the consideration was not grossly inadequate; that there was no intent on the part of V. R. Dinkins to defraud his creditors; that plaintiff had no knowledge of such fraudulent intent, if any existed on the part of her husband; and that the husband furnished no part of the consideration for the assignment of a certain chattel mortgage hereinafter mentioned. On the legal issues the jury found that plaintiff was entitled to possession of the automobile and returned a verdict against defendant S. L. Robbins for $750.00 actual and $500.00 punitive damages. Defendants made a motion for a new trial on the legal issues. Judge Henderson granted a new trial *nisi,* requiring respondent to remit on the record $350.00 actual and $100.00 punitive damages. He also filed a well-reasoned decree in which, after carefully reviewing the evidence and stating the applicable law, he approved and adopted the findings of fact by the jury on the questions submitted, and held that the plaintiff became the owner of the automobile by purchase from her husband and that the transfer of the automobile to her by her husband was made in good faith. Plaintiff complied with the order granting a new trial *nisi,* so that judgment was entered up in her favor for possession of the automobile, and for $400.00 actual and $400.00 punitive damages. Defendants have appealed from both the decree and the order refusing a new trial.

We shall first pass upon the exceptions imputing error to the trial Judge in his determination of the equitable issues. It is contended that the overwhelming weight of the evidence shows that the alleged transfer of the automobile to respondent by her husband was without consideration and made with the intent to defraud the cerditors of V. R. Dinkins, which intent was known to and participated in by respondent.

Briefly stated, the testimony of respondent relating to the purchase of the automobile in question is substantially as follows: Dinkins owned a 1937 LaSalle automobile which had been driven over 100,000 miles. He was approached by the Boyle Motor Company with reference to trading that car for a used 1939 LaSalle. The trade was finally consummated on June 9, 1941. The 1939 LaSalle was valued in the trade at $900.00 and the 1937 LaSalle at $400.00. The difference of $500.00 was made up by a cash payment of $200.00 and the execution by Dinkins of a purchase money mortgage on the 1939 LaSalle to the Boyle Motor Company for $300.00 payable June 19, 1941. Dinkins tried to induce the respondent, his wife, to make this trade. She declined to commit herself at that time, stating that she preferred to think the matter over for awhile. It was his intention to finance the unpaid portion in the event his wife declined to furnish any part of the funds. The respondent agreed, however, to advance to her husband the down payment of $200.00. On June 19, 1941, Dinkins gave his check to the Boyle Motor Company for $200.00. Not having funds in the bank to take care of this check, his wife deposited $250.00 to his credit on the same day. This deposit consisted of $100.00 in cash belonging to respondent which she had at her home, a check drawn by her on her savings account at the bank for $100.00 which was made payable to her husband's order and endorsed by him, and $50.00 in cash or checks belonging to her husband. In other words, $200.00 of this deposit represented funds belonging to respondent. A week or ten days later, respondent finally concluded to purchase the car at a valuation of $900.00. At this time, her husband owed her sundry amounts, borrowed at various times, aggregating $900.00. It was agreed that the value of the 1937 LaSalle, amounting to $400.00, would be applied on this old indebtedness. Respondent had already advanced the down payment of $200.00, and on June 24,

1941, she paid to the Boyle Motor Company $300.00, the amount of the purchase money mortgage, and had the mortgage assigned to her. After the trade was consummated, possession of the car was delivered to respondent. She also had the motor vehicle license with the Highway Department transferred to her name. The checks and deposit slip above referred to were all introduced in evidence by the respondent. The check on respondent's savings account is dated June 10, 1941, and the bank endorsement shows that it was paid on June 11, 1941. The $250.00 deposit is dated June 9, 1941. Respondent's explanation of this discrepancy was to the effect that she either made an error in inserting the date on the deposit slip or there was some error in the bank records. A letter was introduced in evidence written by the cashier of the bank to the effect that there was only one deposit of $250.00.

Both respondent and her husband testified to the foregoing facts. Their daughter, who did not testify at the former trial as she was then at Winthrop College, testified that she was present and heard the trade made between her mother and father, at which time possession of the car was delivered to her mother. Appellants offered no direct testimony, contradicting that offered by respondent, but principally relied on the surrounding circumstances as furishing a legal presumption of fraudulent intention.

The testimony as to other transactions between respondent and her husband, which this Court held on the first appeal was improperly excluded, was gone into at great length at the second trial. In weighing this testimony as to other transactions, Judge Henderson in his decree said: "While there may be suspicious circumstances in some of the business dealings of her husband, as shown by judgment rolls 7806 and 7837, there is no evidence of any connection by Mrs. Dinkins in them such as would justify the Court in sweeping out of the case all of the sworn evidence and doc-

uments in this action, and giving them no weight whatsoever, or warrant a holding that she was a party to a scheme to defraud his creditors. In the other case she set up a claim that certain machinery was so firmly attached to the soil as to become part of the realty. A legal claim of that sort certainly does not necessarily show an intent to defraud. It was decided against her by the Circuit Judge on the evidence relating to the nature of the annexation of the machinery to the soil, and the law bearing upon fixtures as between a landlord and a tenant at will. No question of fraud was there involved."

In referring to certain testimony brought out on this trial which was not developed at the former tiral, Judge Henderson said: "On the first appeal to the Supreme Court, considerable stress was laid upon the unrecorded deed of the First Carolinas Joint Stock Land Bank to Mrs. Dinkins, but as brought out before me on this trial and as shown in the testimony above set forth, Mr. Robbins knew of this deed at all times and that Mrs. Dinkins was the owner; and therefore he suffered no disadvantage by the fact that it was not recorded. * * * Also, in the opinion in the first appeal the fact was pointed out that it then appeared that plaintiff paid her husband nothing to reimburse him for the $400.00 allowance which he received for his old car in the trade. The record at that time, however, did not contain the testimony which was brought out in the trial before me of the debt owed by Mr. Dinkins to his wife, and of the agreement to use a part of that debt in this transaction."

After an elaborate review of all the testimony, Judge Henderson made the following factual findings in his decree: "I find as facts that Mrs. Dinkins bought the automobile from her husband, that it was then valued at $900.00, that she paid $200.00 at the bank, and later paid $300.00 to Boyle Motor Company, and allowed her husband an additional $400.00 on the debt he owed her, and such

debt being about $900.00. I further find that the plaintiff did not know of or participate in any scheme to hinder, delay or defraud the creditors of her husband."

It was his opinion "that the plaintiff and her husband have given clear and satisfactory evidence of the good faith of Mrs. Dinkins in the transaction" and that their testimony "is borne out in many respects by documentary evidence."

The exceptions under consideration involve solely questions of fact which have ·been determined adversely to appellants both by the jury and trial Judge, who had the opportunity not afforded to us of seeing the witnesses, and observing their demeanor on the witness stand. There is abundant testimony to sustain their factual findings. It is true that it is not necessary to prove fraud by direct evidence and that in view of the relation of the parties and the fact that the transfer was made at a time when Robbins was making every effort to realize on his judgment by execution, the burden rested on respondent to show the *bona fides* of the transaction by clear and convincing testimony. It is well established that such transactions will be closely scrutinized by the Courts to see that they are not made to defraud creditors. However, after giving effect to these principles, we still do not feel warranted in holding that the facts found by the trial Judge and jury are against the weight of the evidence. Respondent had taught school a number of years and accumulated property and money of her own, maintaining a savings account in the local bank. The funds of her husband had largely been depleted by business reverses. There is nothing unusual about respondent's purchasing a car, as she had done so on several prior occasions. It is reasonable to suppose that if there had been a mutual intent on the part of respondent and her husband to defraud this judgment creditor, the title to the automobile would have been taken in the name of the respondent in the

first instance, or if the money used to purchase the car belonged to Dinkins and he desired to fraudulently transfer same to his wife, he could more easily have done so without making an investment. Moreover, Dinkins kept in his possession the unemcumbered 1937 LaSalle for several months after judgment was entered against him and during that period made no effort to fraudulently encumber or dispose of the car. In a close case of this kind, the concurrent findings of fact by the jury and chancellor should not be lightly disturbed.

Under Article 5, Section 4, of the Constitution, we are required to review the findings of fact in chancery cases except "in chancery cases where the facts are settled by a jury and the verdict not set aside." Counsel have not referred to this section, nor has any contention been made that the quoted exception applies here. In reaching the foregoing conclusion, we have therefore assumed that we are empowered to review the findings of fact and do not wish to be understood as passing on the question as to whether this case comes within the exception contained in this section of the Constitution.

The remaining exceptions relate to the right of respondent to recover actual and punitive damages. In connection with these questions, appellants call our attention to an affidavit of respondent which was delivered to the Sheriff immediately after the car was seized under execution, in which she stated that she owned this automobile which was "purchased by her from Boyle Motor Company." It is suggested that respondent was thereby estopped from later claiming a different source of title and that this statement misled appellants in determining whether respondent had title to the car. Respondent's explanation of the quoted statement is that this affidavit was prepared by her attorney and signed by her without observing the error. In so far as the equitable issues were concerned; the only effect of this statement

would be to contradict to some extent respondent's contention that she purchased the car from her husband but, even so, it was not of great value as a layman could easily have reached the conclusion that the transaction had the effect of Boyle Motor Company's selling the car to respondent.

■ It is contended that there was no evidence of actual damages. The trial Judge charged the jury, to which there is no exception, that the measure of actual damages would be such damages as "she has sustained by being deprived of the use, enjoyment and possession of the automobile." No question was raised in the Court below to the effect that the evidence did not warrant the recovery of actual damages. The only time any question relating to actual damages was raised appears to have been on a motion for a new trial when it was contended that the amount awarded by the jury was excessive, which contention was sustained by the trial Judge and the amount reduced. The contention now made cannot be raised for the first time in this Court.

■ The remaining question is whether the evidence warranted the recovery of punitive damages. It is undisputed that when the Sheriff levied upon this car, he knew that it was registered with the Highway Department in the name of respondent; that immediately after the car was seized respondent's counsel demanded its return, stating that the automobile belonged to respondent and that she was in immediate need of same, and delivered to the Sheriff the affidavit above referred to; and that the Sheriff, after consultation with appellants' counsel, again refused to surrender possession. We think these facts presented a question for the jury as to whether appellants acted in willful and reckless disregard of respondent's rights in seizing and continuing to withhold the car. *Manley v. Bailey,* 151 S. C., 366, 149 S. E., 119. The affidavit heretofore referred to did not mislead appellants with respect to the re-

spondent's claim of ownership. She was not required to state therein the source of her title to the car. The car was seized by the Sheriff before the affidavit was delivered. In any event the erroneous statement of source of title was only a circumstance to be considered by the jury on the question of whether appellants' conduct in continuing to withhold the car was willful and reckless.

All exceptions are overruled and judgment below affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE and TAYLOR concur.

MR. ASSOCIATE JUSTICE STUKES disqualified.